Dr. Chester A. WILK et al., Plaintiffs,

v.

**AMERICAN MEDICAL ASSOCIATION et al., Defendants-Appellees,**

**The State of New York, Intervening Appellant.**

No. 80–1603.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1980.

Decided Dec. 22, 1980.

As Amended Jan. 9, 1981.

Rehearing and Rehearing En Banc Denied March 25, 1981.

Ellen J. Schneider, New York City, for intervening-appellant.

Jack R. Bierig, Sidley & Austin, Chicago, Ill., for defendants-appellees.

Before SPRECHER, Circuit Judge, WISDOM, Senior Circuit Judge,[*] and BAUER, Circuit Judge.

WISDOM, Senior Circuit Judge.

The State of New York, intervenor in the present action, appeals the denial of its motion to modify a protective order that governs the plaintiffs' use of materials discovered from the defendants in this action. We hold that New York, as a bona fide litigant, has a right to use those materials already discovered by the plaintiffs in this action that are both relevant to New York's suit and not otherwise privileged, under the same restrictions as the plaintiffs. We therefore vacate and remand.

### I.

This action (*Wilk v. American Medical Association*) pits five chiropractors, plaintiffs, against the American Medical Association (AMA), other national medical societies, and various individuals. Plaintiffs posit a nationwide conspiracy on the part of the defendants to eliminate the profession of chiropractic by restricting inter-professional relations between medical doctors and chiropractors and by exerting economic and political pressure on third parties who deal with chiropractors. They seek to bring this alleged conspiracy within the compass of the federal antitrust laws, and pray for treble damages and various forms of injunctive relief.

This action was filed in the Northern District of Illinois on October 12, 1976. Several similar actions have since been brought in various districts throughout the country. On July 5, 1979, New York State, intervenor in the present action, filed such a suit in the Eastern District of New York, acting both as parens patriae and in its proprietary capacity. *New York v. American Medical Association*, No. 79–C–1732. The *New York* complaint advances a group boycott theory under § 1 of the Sherman Act against many of the same medical associations named as defendants in *Wilk*.[1] The two complaints are not absolutely identical. *Wilk* advances a monopolization theory under § 2 of the Sherman Act, as well as the group boycott theory; moreover, New York does not seek treble damages. Nevertheless, the operative charges of wrongdoing in the two complaints are almost word for word the same.

Massive discovery had taken place in *Wilk* by the time *New York* had been filed. Upward of 100,000 documents had been filed and over 100 persons deposed. The bulk of these materials—approximately 80–90 percent—was not available to New York State or to anyone else, however, for they were covered by a protective order issued by the *Wilk* district court. This order, entered February 23, 1977, was issued on motion of the *Wilk* defendants and apparently was not opposed by plaintiffs. Among other things, it prohibits plaintiffs' counsel from revealing any document provided by defendants through discovery, forbids them to divulge even the content of discovery documents if stamped "confidential" by defendants, permits defendants to classify any deposition as "confidential," and provides a

---

[*] Honorable John Minor Wisdom, Senior Circuit Judge for the United States Court of Appeals for the Fifth Circuit, sitting by designation.

1. Nine national medical associations were originally named as defendants in both *Wilk* and *New York*. Two Illinois medical associations and four officials of the AMA were also joined as defendants in *Wilk*, while four New York medical associations and an official of one of them were joined in *New York*.

procedure for the sealing of documents and other materials.[2]

On August 20, 1979, soon after New York had filed its independent action in the Eastern District of New York, it moved to intervene in *Wilk* for the limited purpose of applying for a modification of the February 1977 protective order. The State did not seek to dissolve the protective order entirely; rather, it sought access to the protected materials on the same terms as the *Wilk* plaintiffs. The motion to intervene itself was not opposed, but one of the defendants, the AMA, did oppose the request to modify the protective order. Shortly after that motion was filed, several *Wilk* defendants moved before the Judicial Panel on Multidistrict Litigation to transfer *New York* and two other chiropractic cases to the Northern District of Illinois for coordinated pre-trial proceedings, pursuant to 28 U.S.C. § 1407.[3] Consideration of New York's motion to modify the protective order was stayed pending the Multidistrict Panel's decision.

On January 22, 1980, the Panel issued an opinion denying transfer. *In re Chiropractic Antitrust Litigation*, 483 F.Supp. 811 (J.P.M.L.1980). The Panel recognized that there were indeed questions of fact common to all four cases: central to each action will be discovery concerning the alleged national conspiracy. The Panel, however, denied transfer primarily because discovery in *Wilk* was nearly completed and transfer of the later actions to the Illinois action would delay resolution of that litigation. Such delay was deemed unnecessary, for the Panel contemplated that the discovery completed in *Wilk* would be available for use in the other actions.[4] The Panel was aware of New York's pending motion in *Wilk*, 483 F.Supp. at 812, though it did not purport to consider its merits.

On March 12, 1980, well after the Multidistrict Panel's decision, the *Wilk* district court denied New York's request for modification of the protective order. *Wilk v. American Medical Association*, [1980–2] Trade Reg.Rep. (2 Trade Cas.) (CCH) ¶ 63,-348 (N.D.Ill.1980). From *American Telephone and Telegraph Co. v. Grady*, 594 F.2d 594 (7th Cir.), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979), the court extracted the principle that protective orders may only be modified for the benefit of collateral litigants when "exceptional circumstances" are present. Giving great weight to the interests of the *Wilk* defendants in preserving the order—but without specifying the nature of those interests—the court discounted the recommendation of the Multidistrict Panel.[5] The court also

---

**2.** Subsequent protective orders have been entered as well, but they deal primarily with discovery from third parties, and are not the subject of this appeal.

**3.** The major purposes of consolidating or coordinating pre-trial proceedings under § 1407 is to "eliminate the possibilities of duplicative discovery and inconsistent pre-trial rulings, and thereby conserve the efforts of the parties and the judiciary". *In re Amerada Hess Corporation Antitrust Litigation*, 395 F.Supp. 1404 (J.P.M.L.1975).

**4.** The Panel stated

We observe that suitable alternatives to Section 1407 transfer are available in order to minimize the possibility of duplicative discovery. For example, the parties may request from the appropriate district courts that discovery completed in any action and relevant to one or more of the other actions be made applicable to those actions; or the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions. *See also In re The UpJohn Company Antibiotic Cleocin Products Liability Litigation*, 81 F.R.D. 482 (E.D.Mich.1979); *Manual For Complex Litigation*, Parts I and II, § 3.11 (rev. ed. 1977).

483 F.Supp. 813.

**5.** In its order denying the motion of the State of New York for modification of the protective order, the district court, in part, relied on the fact that, "The cited suggestions made by the Judicial Panel on Multidistrict Litigation cannot reasonably be construed as *mandating* that such be permitted." (Emphasis added). *Wilk v. American Medical Association*, [1980–2] Trade Reg.Rep. (2 Trade Cas.) (CCH) ¶ 63,348 (N.D.Ill.1980).

As a matter of policy, the Judicial Panel on Multidistrict Litigation construes strictly its statutory authority. There is no reported decision in which the Panel has issued a mandate to a district court, except to transfer or to remand a case.

found that much of the discovery material in *Wilk* did not appear to be relevant to the New York litigation. The motion was denied without prejudice to later motions for access to specific *Wilk* discovery relevant and otherwise discoverable in the New York action. Without making any such motion, New York appeals.

## II.

At the outset, the defendants challenge our jurisdiction over this appeal. The AMA correctly notes that since the order denying modification does not dispose of the entire controversy in the district court, the order cannot be "final" within the meaning of 28 U.S.C. § 1291, unless it falls within the "collateral order" doctrine enunciated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

In *American Telephone and Telegraph Co. v. Grady*, this Court held that the grant of an intervening collateral litigant's motion to modify a similar protective order was an appealable "collateral order". In *First Wisconsin Mortgage Trust v. First Wisconsin Corp.*, 571 F.2d 390 (7th Cir. 1978), *adopted en banc on this point*, 584 F.2d 201, we set forth four criteria, all of which must be satisfied before an order can be considered "final" for purposes of the collateral order doctrine:

(1) the order must present an important and unsettled question of law;

(2) the order could not be reviewed effectively on appeal from the final judgment of the entire action since the right claimed in the order would have been lost;

(3) the subject of the order must be separate and independent from the subject of the main cause of action; and

(4) on balance, the danger of denying justice by delay outweighs the inconvenience and costs of piecemeal review.

**6.** Our decision on the merits may require the district court to decide whether certain parts of the *Wilk* discovery are either irrelevant to the *New York* litigation or are privileged, and hence not discoverable by New York. Since

571 F.2d at 393. The AMA seeks to distinguish this case from *Grady* in two ways. First, it argues that since *Grady* itself analyzed a similar request for modification of a protective order, the issue presented by the district court's order cannot be characterized as "unsettled" within the meaning of the first criterion of *First Wisconsin*. Second, AMA suggests that since the order permits the State to attempt more specific motions for relevant discovery materials, the balancing of equities mandated by the fourth criterion should weigh in its favor.

We do not find it necessary to venture far into the quagmire of "collateral order" lore. Both of the two federal appellate courts that have reviewed refusals to modify a protective order in a posture like the present case found mandamus to be a proper remedy. *Ex parte Uppercu*, 239 U.S. 435, 36 S.Ct. 140, 60 L.Ed. 368 (1915); *Olympic Refining Co. v. Carter*, 332 F.2d 260 (9 Cir.), *cert. denied*, 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964). We agree, and since we would in the exercise of our discretion grant such a writ in this case, we could treat the notice of appeal as an application for a writ of mandamus. *United States v. Gonzales*, 582 F.2d 1162, 1165 (7 Cir. 1978); *Olympic Refining Co. v. Carter*, 332 F.2d at 263–64; 16 Wright & Miller, Federal Practice and Procedure § 3932, at 203–04 (1977); 9 Moore's Federal Practice ¶ 110.28, at 316 (1980). It therefore makes little difference whether we predicate review on the collateral order aspect of 28 U.S.C. § 1291, or on our power to exercise "supervisory control of the District Courts" by extraordinary writ under the All Writs Act, 28 U.S.C. § 1651(a). *LaBuy v. Howes Leather Co.*, 352 U.S. 249, 259, 77 S.Ct. 309, 315, 1 L.Ed.2d 290, 299 (1957). *See United States v. 58.16 Acres of Land*, 478 F.2d 1055, 1061 (7 Cir. 1973); 16 Wright & Miller § 3932, at 203–04; *id. at* § 3934.[6]

such decisions require only application of relatively well-settled law to fact, we think it extremely unlikely that the district court's rulings on those details would merit immediate appellate review via collateral order appeal, or man-

### III.

Properly interpreted, *Grady* controls our disposition of this case and requires us to reverse. Federal Rule of Civil Procedure 26(c) permits protective orders to be issued "for good cause shown" to protect litigants from burdensome or oppressive discovery. Yet, "[a]s a general proposition, pre-trial discovery must take place in the [*sic*] public unless compelling reasons exist for denying the public access to the proceedings." *Grady*, 594 F.2d at 596.[7] This presumption should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process. Particularly in litigation of this magnitude, we, like the Multidistrict Panel, are impressed with the wastefulness of requiring the State of New York to duplicate discovery already made. *Grady*, 594 F.2d at 597. *See also Manual for Complex Litigation* ¶ 3.11 (1978). Rule 1 of the Federal Rules requires the Rules to be con-

strued "to secure the just, speedy, and inexpensive determination of every action". We therefore agree with the result reached by every other appellate court which has considered the issue, and hold that where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification. *Olympic Refining Co. v. Carter*, 332 F.2d 260, 265–66 (9 Cir.), *cert. denied*, 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964); *Ex parte Uppercu*, 239 U.S. 435, 439–40, 36 S.Ct. 140, 140–141, 60 L.Ed. 368 (1915). Once such prejudice is demonstrated, however, the district court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order. *Grady* 594 F.2d at 596.[8]

Appellee draws our attention to *Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291 (2 Cir. 1979), and *GAF Corp. v. Eastman Kodak Co.*, 415 F.Supp. 129 (S.D.

---

damus. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 547, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949) (only "serious and unsettled question" can give rise to appealable collateral order); *First Wisconsin Mortgage Trust v. First Wisconsin Corp.*, 571 F.2d at 393; 15 Wright & Miller § 3911, at 485–96; *and see Schlagenhauf v. Holder*, 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152, 159 (1964) (mandamus appropriate to decide "basic, undecided question"), *Atlass v. Miner*, 265 F.2d 312, 313 (7th Cir. 1959) (mandamus appropriate for "fundamental procedural question"), *aff'd*, 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960); 15 Wright & Miller §§ 3933, 3934, at 237–39. *See generally* Note, *Supervisory and Advisory Mandamus Under the All Writs Act*, 86 Harv.L. Rev. 595 (1973).

7. Suggestive, but distinguishable, are cases dealing with the power of courts to limit access to documents and information in their possession. There is a general common-law right of public access to such records, and though federal courts have supervisory power to deny inspection to such records for sufficient cause, the presumption is in favor of public access. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–99, 602; 98 S.Ct. 1306, 1311–13, 1314, 55 L.Ed.2d 570, 579–80, 582 (1978); *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458,

461 (10th Cir. 1980). In certain contexts, this right acquires constitutional status. *Richmond Newspapers, Inc. v. Virginia*, —— U.S. ——, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (right of public to attend criminal trials guaranteed by First Amendment). But of course, unless and until introduced into evidence, the raw fruits of discovery are not in the possession of a court. If the purpose of the common law right of access is to check judicial abuses, *see United States v. Mitchell*, 551 F.2d 1252, 1257–58 (D.C. Cir.1976), *rev'd sub nom. Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), then that right should only extend to materials upon which a judicial decision is based.

8. *See also American Security Co. v. Shatterproof Glass Corp.*, 20 F.R.D. 196 (D.Del.1957). *Cf. United States v. GAF Corp.*, 596 F.2d 10, 15–16 (2nd Cir. 1979) (applying similar analysis to statutory "civil investigative demand"). Of course, the request for modification must be made to the court which issued the protective order. *Cf. Id.; Union Carbide Corp. v. Filtrol Corp.*, D.C.Cal., 278 F.Supp. 553, 555–56 (1967); *United States v. ARA Services, Inc.*, [1978–2] Trade Cas. ⸱ 62,250 (E.D.Mo.1978).

N.Y.1976),[9] each of which denied a collateral litigant's request for access to sealed discovery. These cases are distinguishable in that the party seeking access in them was the federal government, which in each case had at its disposal special investigatory powers not available to private litigants. Thus, the government could have employed a grand jury in aid of its perjury investigation in *Martindell,* and since the antitrust investigation it conducted in *Eastman Kodak* could have led to criminal or civil proceedings, it might have used either a grand jury or the special "civil investigative demand" created by 15 U.S.C. § 1312. As the opinions in both cases suggest, the explicit grant of such extensive investigatory powers should be construed to preclude the implication of supplemental powers, absent unusual circumstances. When the investigator is the government, there is also a unique danger of oppression.[10] This case involves neither circumstance.[11]

■■■■ Nor do we discern any countervailing factors which militate against any modification of the protective order. *Grady* suggested that protective orders should be modified only when "exceptional considerations" are present. 594 F.2d at 597. That was an unfortunate choice of words, for the two considerations actually weighed in *Grady* were thoroughly unexceptional. A collateral litigant should not be permitted to exploit another's discovery in the sense of instituting the collateral litigation simply as a device to obtain access to the sealed information. *Id.* at 597, *citing Johnson Foils, Inc. v. Huyck Corp.,* 61 F.R.D. 405 (N.D.N.Y.1973); *Williams v. Johnson & Johnson,* 50 F.R.D. 31 (S.D.N.Y.1970). This is a corollary of the principle that federal civil discovery may not be used merely to subvert limitations on discovery in another proceeding. *Campbell v. Eastland,* 307 F.2d 478 (5 Cir.), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1962). *See generally* 8 Wright & Miller § 2040, at 291–95. From that principle, it also follows that a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation. *Grady,* 597 F.2d at 597.

In this case, however, there is no suggestion that New York is anything but a *bona fide* litigant who needs access for *bona fide* litigation purposes, and comparison of the *Wilk* and *New York* complaints shows that much, if not most, of the *Wilk* discovery must be eventually discoverable in the New York action. "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ... if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." F.R.Civ.P. 26(b)(1). The two complaints are founded on virtually identical allegations of nationwide conspiracy. A great deal of the *Wilk* discovery therefore must be sufficiently relevant to New York's suit to be discoverable under the liberal standards of the Federal Rules; not until oral argument on appeal did counsel for the appellee even suggest that any of it was otherwise privileged.[12] Indeed, the only general argument advanced by the appellee for denying access is that a contrary holding might encourage others to file similar suits in hopes of obtaining a similar access

---

**9.** *See also Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* [1978–2] Trade Cas. ¶ 61,961 (E.D.Pa.1976).

**10.** This is not to say that if the government institutes a civil suit in its proprietary capacity, without the possible benefit of such special investigatory tools, it should not be treated as a private litigant for this purpose.

**11.** A further distinguishing feature of *Martindell* and *Eastman Kodak* is that a criminal or civil suit against the target of investigation had not been filed in either case at the time access

to another's discovery was sought. *Cf. United States v. United Fruit Co.,* 410 F.2d 553, 556 (5th Cir.), *cert. denied,* 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969) (private party cannot obtain another's sealed discovery when party is not litigant).

**12.** We note that one of the major differences between *Wilk* and *New York* is that the former includes a claim for damages, but at least as of the date of New York's intervention in this action, none of the discovery in *Wilk* related to damages.

to the discovery material. There is no merit whatever to this argument. A *bona fide* litigant is entitled to his day in court. That the expense of litigation deters many from exercising that right is no reason to erect gratuitous roadblocks in the path of a litigant who finds a trail blazed by another. Any legitimate interests in secrecy can be accommodated by amendment of the protective order to include the new litigants within its restrictions, rather than simply vacating it.

Our view is strengthened in this case by the Multidistrict Panel's refusal to transfer the other chiropractic cases to the *Wilk* district court for consolidated or coordinated pre-trial proceedings, for the Panel's decision relied heavily on the availability of the *Wilk* discovery to those other actions even without transfer. As noted earlier, nothing in 28 U.S.C. § 1407 gives the Multidistrict Panel power to issue a mandate to a district court concerning the scope of a protective order. But the Panel's suggestions in cases such as this must be given great respect if it is to carry out effectively its statutory duty of judging the wisdom of transfers so as to promote the "just and efficient conduct" of multidistrict litigation involving common issues of fact. At a minimum, the party opposing modification must demonstrate that the Panel's suggestion will tangibly prejudice a legitimate interest. This the AMA has not done.

We conclude that, given the close similarity between the New York action and *Wilk* and the Panel's conclusion that "much of the relevant discovery [in the New York action] has already occurred in the Illinois action", 483 F.Supp. at 813, the State is presumptively entitled to access to all of the *Wilk* discovery on the same terms as the *Wilk* plaintiffs. The right to move for access to specific *Wilk* discovery demonstrably relevant to the New York action, accorded the State by the district court's order, is of small utility to the intervenor. If counsel for New York knew exactly what documents were relevant to that suit, he would not have needed to request modification of the *Wilk* protective order at all; he could simply have made a discovery request for those documents before the New York

court. Hence, on remand, the burden must be on the parties opposing modification to establish that particular discovery materials in *Wilk* would be immune from eventual discovery in the *New York* action, either by irrelevance or privilege.

The decision of the district court is vacated, and this case is remanded for proceedings in conformity with this opinion.