**PHILLIPS PETROLEUM COMPANY, Plaintiff,**

v.

**T. Boone PICKENS, et al., Defendants.**

**Joe B. Wells, Morris Bailey, Walter Kellogg, Edgar H. Selecman, Harold Watkins, and Walter Watkins, Deponents-Movants.**

**Securities and Exchange Commission, Intervenor-Movant.**

**Misc. A. No. 2–84–42.**

United States District Court, N.D. Texas, Amarillo Division.

April 5, 1985.

---

Robert L. Templeton, Templeton & Garner, Amarillo, Tex., for deponents-movants.

Michael V. Powell, Dallas, Tex., Jack Ritchie, Joe Cochran, Amarillo, Tex., for Phillips Petroleum Co.

David P. Nelson, S.E.C., Washington, D.C., for intervenor-movant.

## ORDER

MARY LOU ROBINSON, District Judge.

This action originated as a Motion for Protective Order filed by certain persons whose depositions were sought by Phillips Petroleum Company in connection with a civil action it had brought against T. Boone Pickens, Mesa Petroleum Company, and others in Federal District Court in Delaware, as a defensive measure against a tender offer for Phillips stock. A Protective Order was entered on December 18, 1984, which allowed the discovery to go forward, but limited its dissemination. Now that Phillips and Mesa have settled their differences, the deponents want all copies of their depositions returned to them, while the Securities and Exchange Commission has intervened and seeks a modification of the Protective Order to allow those in possession of the depositions, and documents produced at the depositions, to produce those items in response to subpoenas issued by the Commission's staff pursuant to a formal order of investigation into trading in Phillips securities.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This Miscellaneous Case was commenced as an ancillary action in aid of an action

pending in the United States District Court for the District of Delaware as *Phillips Petroleum Company v. Pickens*, Civil Action No. 84–724 (the "Delaware Litigation"), which since has been dismissed, without prejudice to the refiling of same.

## A. *The Delaware Litigation*

In the Delaware Litigation, Phillips sued Mr. Pickens, Mesa Petroleum Company, and others (the "Mesa Defendants"), to enjoin an allegedly unlawful publicity campaign that the Mesa Defendants were conducting to condition Phillips' shareholders to sign forms consenting to replacement of the Phillips board of directors with Mr. Pickens and his associates, and to convince Phillips' shareholders to tender their shares to a Pickens-controlled partnership that had announced its intentions to make a formal tender offer. Phillips alleged that the publicity campaign violated § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n, and the Proxy Rules of the United States Securities and Exchange Commission ("SEC"), as well as other federal statutes and the common law.

As one of several reasons for contesting the lawfulness of the Mesa Defendants' publicity campaign, Phillips alleged that the Mesa Defendants were omitting to disclose matters highly material to the integrity of Mr. Pickens and his proposed slate of new Phillips' directors and their ability to run a company. As pertinent here, Phillips' *Complaint* in the Delaware Litigation alleged as follows:

40. Defendants have also failed to disclose the fact, which is highly material to the integrity of the proposed new Phillips directors, that Pickens has unlawfully, and in breach of his fiduciary duties, engaged in the practice of tipping friends, fellow officers of Mesa and fellow members of the Amarillo Country Club of his various plans to acquire stock of major oil companies, thereby enabling the tippees of such material, non-public confidential information to purchase shares of stock of, among other publicly-traded companies, the Cities Service Company, General American Oil Company, Superior Oil Company and Gulf Oil Corporation from shareholders of such companies who were unaware of Pickens' plans to seek control of those companies.

## B. *The Subpoenas Duces Tecum and the First Motion for Protection*

To obtain admissible evidence on its allegations of unlawful "tipping," Phillips caused deposition subpoenas *duces tecum* to be issued by the Clerk of this Court and served on twelve residents of Amarillo and one resident of Borger. The depositions were to be taken in Amarillo and Borger during the period December 18 through 24, 1984. Each deponent was directed to produce three categories of documents: (a) documents reflecting trades in the securities of General American Oil Company, Superior Oil Company, Cities Service Company, Gulf Oil Corporation and any other corporation in which any of the Mesa Defendants had acquired 3 percent or more of any class of stock; (b) documents reflecting communications between the deponent and any of the Mesa Defendants regarding publicly-traded securities; and (c) documents reflecting any previous investigation of insider trading. Each of the Movants was served with a subpoena *duces tecum* in December.

On December 17, 1984, before any depositions had commenced, five of the Movants filed their first *Motion for Protection* in this Court (the "First Motion"). One additional person, Mr. Jerome R. Walsh, Jr., was also listed as an applicant on the First Motion. In the First Motion, the applicants sought orders (1) that the applicants' depositions not be taken, (2) that the discovery be had only upon specification of reasonable times and conditions, (3) that the scope of discovery be limited, (4) that discovery be conducted with no one present except persons authorized by the Court, and (5) for further relief provided by Rule 26(c) as the Court deemed appropriate.

On December 17th, this Court held a hearing on the First Motion. The applicants were represented by counsel, and the Court heard all testimony and argument

that the applicants sought to present. At the conclusion of the hearing, the Court stated that the applicants had not presented any basis for quashing the subpoenas, but that the Court would enter a protective order that the applicants' testimony and documents would be disclosed only to the parties to the Delaware Litigation and their counsel, except that the testimony could be offered into evidence in any litigation or administrative proceeding involving the proposed tender offer for, or takeover of, Phillips by the Mesa Defendants. The Court also ruled that the applicants' depositions would be taken with only the court reporter, the parties, the witness, and counsel present, and that if filed, the deposition transcripts would be filed under seal. Except as described above, the Court denied the relief requested in the First Motion. On December 18, 1984, the Court signed a *Protective Order* formalizing its rulings on the First Motion.

### C. *The Depositions*

Only four of these six Movants were deposed by Phillips. The longest of the four depositions required one-half day. The depositions of Movants Wells and Bailey were never taken, and those Movants produced no documents. (The Wells and Bailey depositions were scheduled for December 24, 1984; but on Sunday night, December 23, 1984, Phillips and the Mesa Defendants announced that they had entered into a conditional agreement settling all pending disputes, including the Delaware Litigation. At approximately 9:15 a.m., December 24, 1984, counsel for Phillips advised counsel for Movants Wells and Bailey that their depositions would not be taken and that those Movants were released from Phillips' subpoenas.)

Movant Kellogg was deposed, with his agreement, by long distance telephone from Houston. He produced no documents and testified that he had none responsive to the subpoena. Movant Selecman produced only one document, which was neither marked nor copied. Movants Harold and Walter Watkins produced documents at their depositions. Those documents con-

sisted principally of brokers' confirmation slips of securities trades. Phillips' counsel copied those documents and returned the originals to the Movants. Only two deponents, Dr. Harold Watkins and Mr. Kellogg, were represented by counsel during their depositions.

## II. DESCRIPTION OF THE MOTIONS BEFORE THE COURT

### A. *The Second Motion for Protection*

On January 18, 1985, more than three weeks after Phillips' counsel completed the last of the depositions at issue herein, Movants filed the instant *Motion for Protection of Deponents*. In their motion, Movants request the Court to order Phillips, its counsel, and Mr. Capwell, the court reporter, to deliver the originals and all copies of Movants' deposition transcripts to Movants, together with their attorneys' notes and all copies of all documents produced by Movants. Movants also request the Court to order all parties in the Delaware Action not to make any further use or any publication of information obtained from Movants and not to deliver any such information to their parties. Movants also request the Court to award Movants' alleged expenses, in the amount of $50,000. Finally, Movants make a general request for any further relief under Rule 26(c) of the Federal Rules of Civil Procedure that the Court may deem appropriate.

### B. *The SEC Motion for Modification*

During December of 1984, staff members at the Securities and Exchange Commission ("the Commission") initiated an informal investigation into trading activity in the common stock and options on common stock of Phillips and other issuers. The inquiry revealed that during the period shortly before the announcement of the proposed cash tender offer for Phillips common stock by Mesa, the volume and price of both the common stock and call options on the common stock of Phillips increased dramatically. Moreover, a review of data on trading in securities of previous Mesa target companies, including,

but not limited to, General American Oil, Cities Service Company, Superior Oil Co., and Gulf Oil Corp., indicated that volume and market prices increased significantly prior to the announcements of tender offers or proposed tender offers.

The January 24, 1985, issue of *New York* magazine contained an article by a financial writer, Dan Dorfman, attached as Exhibit D to the SEC's motion, concerning the alleged misuse of inside information. Dorfman stated in the article that at least one director of Mesa, Harley Hotchkiss, and at least three members of the Amarillo Country Club, of which Pickens is a member, have traded in securities of targets of Mesa takeover bids. The club members identified were James Besselman, an Amarillo lawyer and friend of Pickens who has reportedly represented him in personal matters; William Ware, Executive Vice President of Amarillo National Bank; and Walter Watkins, an Amarillo doctor, whose brother Harold is reportedly one of Pickens' closest friends.

On January 28, 1985, the Commission issued a formal order of private investigation entitled "In the Matter of Certain Trading in Securities of Phillips Petroleum Company and Other Issuers". In the Order, the Commission directed, pursuant to the provisions of Section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(a), that a private investigation be conducted by staff members to determine whether violations of antifraud provisions of the Securities Exchange Act of 1934 have occurred in connection with transactions in securities of Phillips and other issuers by persons having material non-public information with respect to those securities. The Commission designated certain staff attorneys as officers and empowered them, among other things, to "require the production of any books, papers, correspondence, memoranda, or any other records and materials deemed relevant and material to the inquiry".

In light of the matters subject to the Commission's investigation and questions of possible securities law violations raised by the Delaware litigation, and in view of subsequent published articles raising the possibility of misuse of material, non-public information in connection with possible transactions in securities by individuals or entities affiliated with Mesa and Pickens, the Commission has determined that the deposition transcripts and related documents covered by the protective order are relevant to its ongoing investigation. Accordingly, the Staff has issued subpoenas *duces tecum* calling for production of such materials. The Commission has intervened in this action and requests that this Court modify the protective order such that the deposition transcripts and related documentation can be produced by the persons and entities previously served with subpoenas *duces tecum.*

### III. MERITS OF THE MOTIONS

#### A. *The Second Motion for Protection*

Movants Joe B. Wells and Morris Bailey were never deposed and did not produce any documents, thus any requested relief on their behalf is moot.

Movant Walter Kellogg, as noted above, was not an applicant for protection in the First Motion for Protection. His current Motion for Protection is untimely. A motion for protection under Rule 26(c) must be made before the discovery sought is scheduled or at least during the discovery. The rule does not allow post-discovery motions for protection if there was an opportunity to move for a protective order before the discovery took place. *See King v. Fidelity National Bank,* 712 F.2d 188, 191 (5th Cir.1983); 8 C. Wright & A. Miller, Federal Practice & Procedure § 2035 at 262–63 (1970).

The remaining Movants have failed to make the necessary showing under Rule 26(c) for a modification of the Protective Order previously entered. Indeed, the Second Motion lacks any indication of possible future injury to these movants if the Protective Order is not modified. Phillips, on the other hand, could sustain future injury if the Movants' request for a return of all

transcripts and notes were granted. Phillips, its officers and directors, are defendants in at least four shareholders' derivative actions. The Delaware Litigation, itself, is at issue in one of those suits, *Edelman v. Phillips Petroleum Company*, Civil Action No. 7899 (Delaware Chancery Court in and for New Castle County). The *Edelman* plaintiff alleges that there was "no economic, corporate or business justification" for the resistance by Phillips' officers and directors to the Mesa Partners' efforts to obtain control of Phillips and tender for Phillips' shares. The plaintiff alleges that one of the acts taken to resist the Mesa Partners' efforts was the filing of the Delaware Litigation. Phillips and its counsel desire to preserve for possible use in that suit all of the pleadings and depositions generated in the Delaware Litigation. Of course, such use would be subject to this Court's previously entered Protective Order.

■ The Movants' request for expenses is equally without merit. As required by Rule 45(c) of the Federal Rules of Civil Procedure, Phillips tendered to each of the Movants, at service of his subpoena, the statutory witness fee for one day's attendance plus mileage. None of the Movants spent more than one-half day giving his deposition. There can be no doubt that any witness who is subpoenaed suffers some inconvenience, but the inconvenience "is part of the price we pay to secure the effective administration of justice and the enforcement of our laws." *In re Radio Corp. of America*, 13 F.R.D. 167, 172 (S.D. N.Y.1952). Movants are not entitled to further payment for their "time for preparation and taking of the depositions [and] inconvenience."

■ Courts have considered the question whether a nonparty witness should be reimbursed expenses incurred in producing documents in response to a subpoena. The usual procedure for requesting such a reimbursement is to file a motion prior to the time for responding to the subpoena that compliance be conditioned upon advancement of the "reasonable cost of producing the books, papers, documents or tangible things." Fed.R.Civ.P. 45(b). In any event, the courts have not required reimbursement unless the costs are great or the document demand unreasonably broad. *See, e.g., United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364 (9th Cir.), *cert. denied*, 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1329 (1982) ($2.3 million in claimed "out-of-pocket" costs, and third parties had reserved their right to claim costs of production and had rendered periodic reports); *SEC v. Arthur Young & Co.*, 584 F.2d 1018 (D.C.Cir.1978), *cert. denied*, 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979) (claimed costs of $100,-000); *Blank v. Talley Industries, Inc.*, 54 F.R.D. 627 (S.D.N.Y.1972) (reimbursement denied).

It would be frivolous to suggest that these Movants incurred great costs in producing documents in response to Phillips' subpoenas. The only Movants who produced any documents were Messrs. Selecman and Harold and Walter Watkins. Mr. Selecman produced one page, and it was neither marked or copied. Both Harold and Walter Watkins did produce several pages of brokers' confirmation slips and related documents; but Phillips' counsel made copies of those documents on Phillips' machines and returned the originals to the witnesses during their depositions.

There is no authority in the federal rules for reimbursing a third party witness for his attorneys' fees. Nor should Movants be reimbursed for any "accountants' fees." Nothing in Phillips' subpoenas required Movants to seek the professional services of an accountant. Phillips simply requested Movants to produce certain limited categories of documents.

### B. *The SEC Motion for Modification*

■ Senior Circuit Judge John Minor Wisdom, sitting by designation in the Seventh Circuit, recently summarized the law applicable to this motion:

> Federal Rule of Civil Procedure 26(c) permits protective orders to be issued "for good cause shown" to protect litigants from burdensome or oppressive dis-

covery. Yet, "[a]s a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." *American Telephone & Telegraph Co. v. Grady,* 594 F.2d 594, 596 (7th Cir.), *cert. denied,* 440 U.S. 971 [99 S.Ct. 1533, 59 L.Ed.2d 787] (1979). This presumption should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process.... We therefore agree with the result reached by every other appellate court which has considered the issue, and hold that where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.

*Wilk v. American Medical Association,* 635 F.2d 1295, 1299 (7th Cir.1980).

The Deponent-Movants' response to the SEC motion contains only conclusory statements concerning an invasion of the Movants' right to privacy. It makes no showing that the modification requested by the SEC would tangibly prejudice substantial rights of the Movants. Indeed, the Movants' response is notably silent on the substantial right which springs most readily to mind on these facts—the Fifth Amendment right against self-incrimination. Were the SEC a private litigant, the analysis would end here, but the SEC is not a private litigant.

In *Wilk,* the Court discussed cases such as *Martindell v. International Telephone & Telegraph Corp.,* 594 F.2d 291 (2d Cir. 1979), and *GAF Corp. v. Eastman Kodak Co.,* 415 F.Supp. 129 (S.D.N.Y.1976), each of which denied a collateral litigant's request for access to sealed discovery.

These cases are distinguishable in that the party seeking access in them was the federal government, which in each case had at its disposal special investigatory powers not available to private litigants.... As the opinions in both cases suggest, the explicit grant of such extensive investigatory powers should be construed to preclude the implication of supplemental powers, absent unusual circumstances. When the investigator is the government, there is also a unique danger of oppression.

*Wilk,* 635 F.2d at 1300.

Another concern raised where, as here, the government's investigation could result in criminal charges is that "the government might try to circumvent the more limited discovery rules of criminal procedure through exploitation of expansive civil discovery." Comment, *Nonparty Access to Discovery Materials in the Federal Courts,* 94 Harv.L.Rev. 1085, 1101 (1981).

Of course, the SEC has special investigatory powers under § 21 of the Securities Exchange Act of 1934 which are not available to private litigants. Unlike *Martindell,* where the government was not seeking the discovery material by exercising any of its special investigatory powers, here the SEC is seeking the discovery material by exercising its subpoena power under § 21. This Court is asked only to modify its Protective Order to allow those subpoenaed to produce the documents covered by the Order. The Court is not asked to order that the production actually take place. In this context, and because no attempt to circumvent the criminal discovery rules through exploiting the civil discovery is disclosed by the record, the Court finds that the SEC's requested modification should be granted. *See United States v. GAF Corp.,* 596 F.2d 10 (2d Cir.1979) (Government gained access to the same material previously denied it in *GAF Corp. v. Eastman Kodak, supra,* by issuing a civil investigative demand under the subsequently enacted provisions of the Hart-Scott-Rodino Antitrust Improvements Act of 1976; court decided that the protective

order should be modified so that the CID could be enforced but confidentiality preserved).

## IV.  CONCLUSION

It is, therefore, ORDERED that:

1.  Movants' Second Motion for Protection is DENIED.

2.  The SEC's Motion for Modification of the Protective Order is GRANTED.  This Court's Protective Order dated December 18, 1984, is hereby modified so as to permit production of such documentation referenced therein, in response to subpoenas *duces tecum* issued by the staff of the Commission pursuant to its formal order of private investigation captioned, "In the Matter of Certain Trading in Securities of Phillips Petroleum Company and Other Issuers," File No. HO–1699, issued January 28, 1985.

3.  The SEC shall not disclose any documentation produced pursuant to this modification to any person other than its staff and counsel, except that the documentation may be offered into evidence before any court or administrative agency in which litigation or proceedings are pending involving the subject matter of the formal order of private investigation cited above, subject to any further orders that may be entered by any such court.  (This Court is not ruling upon the admissibility of the testimony or documents in any litigation or proceeding.)

4.  To the extent that it is not otherwise compelled to do so by this Order, the SEC shall accord any documentation produced pursuant to this modification "confidential treatment" pursuant to 17 C.F.R. § 200.83.

It is so ORDERED.