In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2936

CHARLENA GRIFFITH, FANNIE BOOKER,
CAROLYN RUSSEL, et al.,

Plaintiffs-Appellees,

v.

UNIVERSITY  HOSPITAL, L.L.C., UNIVERSITY
HOSPITAL LIMITED PARTNERSHIP, UNIVERSITY
HEALTH SYSTEMS, INCORPORATED, et al.,

Defendants-Appellees,

and

FREDERICK T. ALT, ALAN BERGER,
NORMAN BERGER FAMILY TRUST, et al.,

Proposed Intervenors-Appellants.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 7370--Robert W. Gettleman, Judge.

Argued FEBRUARY 14, 2001--Decided May 4, 2001


  Before POSNER, COFFEY and RIPPLE, Circuit
Judges.

  COFFEY, Circuit Judge.  This appeal
concerns an attempt by the Appellants to
intervene in this class-action suit for
purposes of modifying a protective order
and settlement agreement that preclude
them from reviewing materials obtained by
the plaintiffs through discovery.
Appellants are the claimants in an
arbitration proceeding with similar
parties and issues, and they wish to
avoid the expense of duplicating the
discovery that has taken place in this
suit.  The district court denied the
Appellants' motion to intervene, finding
that modification of the confidentiality
provision of the settlement agreement
posed a danger to the settlement--the
details of which had already been
distributed to the class members.
Appellants contend that the district
court abused its discretion in denying
the motion because it did not identify a

substantial right that would be tangibly prejudiced by allowing an intervention solely to modify the proposed settlement's confidentiality provisions. We affirm.

BACKGROUND

On May 29, 1997, approximately 225 employees of a Chicago psychiatric hospital lost their jobs when the facility was permanently closed. The hospital (University Hospital, L.L.C. and its corporate predecessor, University Hospital, Inc.) had been operating under a lease from University Hospital Association Limited Partnership (hereinafter "UHALP"), which was formed in 1989 specifically to purchase, renovate and lease the facility for use as a psychiatric hospital.

UHALP consisted of a general partner and four classes of limited partners, including the Class A partners who are the proposed intervenors in this action. The partnership agreement named Ling Corporation as the general partner and Ling's owner, Michael C. Markovitz, as the Class C partner. The partnership agreement contained a "sell-back option" under which the general and Class C partners were required to repurchase other partners' shares if one or more "triggering events" occurred. One such triggering event was the closing of the hospital for a period in excess of thirty days.

In March 1997, the hospital closed for more than thirty days. Pursuant to their rights under the partnership agreement, Appellants (representing a majority of the Class A partners) issued a sell-back demand to Ling and Markovitz. This demand was not honored, and Ling also refused to furnish an equitable partnership accounting requested by certain Appellants. On October 31, 1997, the Class A partners filed a complaint with the American Arbitration Association against Ling and Markovitz seeking enforcement of the sellback provision and an equitable accounting.

Meanwhile, former hospital employees (hereinafter Griffith Plaintiffs) filed the underlying class-action suit on October 21, 1997, seeking damages against the hospital, UHALP, Markovitz and

others, under statutory and common law, including a claim arising under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. sec. 2102, et seq. This claim alleged that the hospital's failure to give employees 60-day prior notice before closing the hospital was a violation of federal law. During discovery in Griffith v. UHLLC, counsel for the plaintiffs deposed fourteen witnesses and obtained 11,000 documents related to the reasons for closing the hospital, the hospital's billing practices, and its financial problems. The district court issued two protective orders regarding matters under discovery, one on July 8, 1998, and one on July 15, 1999.

Due to the similarity of issues in the arbitration and the instant case, discovery information obtained from the hospital in this case was shared between attorneys for the Griffith Plaintiffs and the Class A partners in the Alt v. Markovitz arbitration (hereafter Alt Claimants). On March 1, 2000, however, the Griffith parties reached a settlement that included an agreement providing that the parties were required to maintain the confidentiality of "any information produced during the course of the Griffith litigation . . . except that filed in the public Court record." The district court preliminarily approved the agreement on March 22, 2000, and directed that members of the class be notified of the settlement, including the confidentiality provision.

Following approval of the settlement, Baum Sigman, counsel for the Griffith plaintiffs, notified counsel for the Alt claimants that pursuant to the confidentiality provision of the settlement agreement he could no longer share information he obtained during discovery. Because the Alt Claimants had not completed their review of Sigman's files, they responded in May 2000 by obtaining a subpoena duces tecum against Sigman in the arbitration proceeding. After Markovitz and Ling Corporation objected to the subpoena and requested that it be quashed, the arbitrator ordered Sigman to release information not rendered confidential either by the settlement agreement or the Griffith court's protective orders. However, the arbitrator declined to enforce the

subpoena as it related to information rendered confidential by the district court in Griffith, and suggested the Alt Claimants bring a motion for intervention before the Griffith court. The motion to intervene, including a proposed motion to modify the protective orders and the settlement agreement's confidentiality clause, was filed on June 19, 2000.

At a hearing held three days later, the district court denied the motion, fearing that intervention could potentially derail the settlement and "change the rules of the game for the class members," who had already been notified of all provisions in the agreement (including the confidentiality clause) two months before. The court believed that intervention on the terms requested by the Alt Claimants could upset the finality of the settlement, thereby affecting the Griffith Plaintiffs adversely. Although sympathetic to the Alt Claimants' desire to avoid having to undertake extensive discovery already performed by the Griffith Plaintiffs, the court placed a higher value on protecting the interests of class members who had relied on the notice of settlement they received: "[T]hat is paramount here. It's more important than avoiding some duplication in discovery efforts."

Thus, even though the court acknowledged that it would normally be inclined to allow intervention, the court found that the potential for prejudice resulting from a change in the agreement's terms of confidentiality outweighed the Alt Claimants' interest in avoiding duplicate discovery. In July 2000, the district court granted final approval for the settlement agreement and ordered disbursement of the settlement funds that had been deposited in escrow.

DISCUSSION

The Alt Claimants appeal the district court's decision to deny their motion to intervene. A district court's denial of a motion for permissive intervention is reviewed under the abuse of discretion standard. Shea v. Angulo, 19 F.3d 343, 346 (7th Cir. 1994).

The rule of law applicable to a decision in this case provides as follows: "Where an appropriate modification of a

protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification." Wilk v. American Medical Association, 635 F.2d 1295, 1299 (7th Cir. 1981). "Once such prejudice is demonstrated, however, the District Court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order." Id.

We have recognized that intervention is "the procedurally appropriate course for third-party challenges to protective orders." Grove Fresh Distrib. Inc. v. Everfresh Juice Co., 24 F.3d 893, 896 (7th Cir. 1994). Federal Rule of Civil Procedure 24(b), governing permissive intervention, is "sufficiently broad-gauged to support a request of intervention for the purposes of challenging confidentiality orders." Jes sup v. Luther, 227 F.3d 993, 998 (7th Cir. 2000) (applying Rule 24(b)(2) to newspaper's motion to intervene in settlement agreement that included a confidentiality provision). However, Rule 24(b) vests district courts with "considerable discretion" when deciding whether to permit intervention by third parties seeking to protect their interests in a particular action. EEOC v. National Children's Center, Inc., 146 F.3d 1042, 1048 (D.C. Cir. 1998). Given this board discretion, reversal of a court's denial of a Rule 24(b) motion for permissive intervention "is a very rare bird indeed." Id., (citing United States v. Pitney Bowes, Inc., 22 F.3d 66, 73 (2d Cir. 1994)).

The Alt Claimants rely on Wilk for their position that the district court erred in denying their motion to intervene for the limited purpose of modifying the protective orders and confidentiality agreement. Wilk involved two very similar antitrust suits against the American Medical Association, one brought by a group of Illinois chiropractors and one brought by the State of New York. Wilk, 635 F.2d at 1296. After an Illinois district court issued a protective order covering most of the discovery materials obtained in the case brought by the chiropractors, the State of New York

moved to intervene for the limited purpose of modifying that protective order. Id. at 1297. The Illinois court ultimately denied New York's motion to modify the protective order. Id. This Court reversed, noting that allowing the use of discovery "in aid of collateral litigation on similar issues . . . materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process." Id. at 1299. We held that these policy considerations justify intervention for the purpose of modification of protective orders unless such modification "would tangibly prejudice substantial rights of the party opposing modification." Id.

The Wilk test requires a district court to determine, when faced with a motion to intervene to modify a protective order, (1) whether the party opposing intervention has any substantial right at stake, and (2) whether the proposed modification would "tangibly prejudice" that right. Id. at 1299; see also Grove Fresh, 24 F.3d at 896 (remanding denial of motion to modify a protective order for reconsideration in light of Wilk); Jepson, Inc. v. Makita Elec. Works, Ltd., 30 F.3d 854 (7th Cir. 1994). If tangible prejudice is established, the court must decide "whether that injury outweighs the benefits of any possible modification of the protective order." Wilk, 635 F.2d at 1299.

The Alt Claimants argue that the district court abused its discretion in holding that the Griffith parties possessed a substantial right that would be prejudiced by modifying the settlement agreement and protective orders to allow the Alt Claimants access to the discovery material. They contend that a substantial right is not at stake here merely because the discovery materials might be harmful to the Griffith defendants. They further argue that the only possible substantial right which could be raised in a Wilk analysis of this case is one of protection from transfer based on the privileged nature of the discovery materials. Since discovery in the arbitration proceeding could recreate the information, the Alt Claimants submit that the materials are not privileged and thus no substantial right of the parties in Griffith is at stake.

These arguments ignore the district court's clear identification of the substantial right at issue in this case-- the right of class members affected by the settlement to rely on its provisions, including the confidentiality provisions. The court also found that the proposed intervention would tangibly prejudice that right and might very well upset the settlement. As the district court judge noted at the June 22, 2000 motion hearing, "[I]n managing a class action, to change the rules after notice has gone out [and] preliminary approval has been given . . . could upset potentially that settlement and change the rules of the game for the class members."

The district court recognized the Alt Claimants' presumptive right to intervene and modify the settlement agreement and protective orders, but believed that such action would undermine the parties' reliance on the confidentiality provision of the settlement agreement and possibly compromise the agreement altogether. Indeed, the settlement agreement was reached only after three years of complex litigation, extensive negotiation, and presentation to the district court for approval. At the very late date on which the Alt Claimants brought their motion for intervention, in excess of 200 settlement notices had already been sent to class members notifying them of the terms of the settlement. Permitting intervention on the terms requested by the Alt Claimants, would, at the very least, require revised notices to be prepared and sent to all class members. We conclude that the district court did not abuse its discretion in denying the Alt Claimants' motion to intervene and in ruling that the Griffith parties' reliance on the negotiated terms of its settlement was a substantial interest that would be prejudiced by permitting intervention on the terms requested by the Alt Claimants.

Our conclusion is buttressed by the fact that the Alt Claimants make no claim that the discovery materials obtained in the Griffith suit, which are now rendered confidential by the settlement agreement, cannot be obtained through discovery in the arbitration. While it is true that the rule of Wilk is intended to avoid the wastefulness of duplicating discovery already made, this consideration,

standing alone, must not take precedence over a court's detailed identification of substantial rights that would be prejudiced by intervention for modification purposes. Once prejudice has been found, the district court enjoys broad discretion to weigh such prejudice against the benefits of permitting modification of a protective order. Wilk, 635 F.2d at 1299. Where, as here, the benefit to be obtained by permitting modification consists solely of the convenience of the moving party, as opposed to the preservation of or access to information otherwise unattainable, we cannot say that the district court abused its broad discretion in finding that intervention was not appropriate. The burden imposed on the Alt Claimants by denial of their motion to intervene is no greater than what they would have experienced if the Griffith suit had never been filed, or had been settled before substantial discovery had taken place. In light of this fact, we cannot say that the benefit to be conferred by granting the motion to intervene in any manner outweighs the prejudice to the Griffith parties identified by the district court.

Because we affirm the district court's decision to deny intervention based on the authority of Wilk, we need not address Appellees' additional argument that the Alt Claimants' motion to intervene and modify the settlement agreement and protective orders was untimely.

CONCLUSION

We hold that the district court did not abuse its discretion in determining that the Appellees possessed a substantial right that would have been prejudiced by permitting intervention for purposes of modifying the settlement agreement and protective orders. The decision of the district court is AFFIRMED.