332 F.2d 260
 OLYMPIC REFINING COMPANY, a corporation, Petitioner,
v.
The Honorable James M. CARTER, Judge of the United States District Court of the Southern District of California, Southern Division, Respondent.
 No. 19011.
 United States Court of Appeals Ninth Circuit.
 May 19, 1964.
 
 Joseph L. Alioto and Maxwell M. Blecher, San Francisco, Cal., for petitioner.
 James M. Carter, San Diego, Cal., for respondent.
 
 
 1
 William H. Orrick, Jr., Asst. Atty. Gen., Robert B. Hummel and Michael I. Miller, Attys., Dept. of Justice, Washington, D. C., for intervenor United States.
 
 
 2
 William E. Mussman, Francis R. Kirkham, David T. Steffen, Pillsbury, Madison & Sutro, San Francisco, Cal., for intervenor Standard Oil Co. of California.
 
 
 3
 S. R. Vandivort and C. D. Walz, Jr., Los Angeles, Cal., for intervenor Shell Oil Co.
 
 
 4
 L. A. Gibbons, D. C. Gregg, and A. A. Hauk, Los Angeles, Cal., for intervenor Union Oil Co. of California.
 
 
 5
 Harold C. Morton, Los Angeles, Cal., for intervenor Conservation Committee of California Oil Producers.
 
 
 6
 Edmund D. Buckley, Ralph D. Copley, Jr., Wayne H. Knight, Overton, Lyman & Prince, Los Angeles, Cal., for intervenor Tidewater Oil Co.
 
 
 7
 George W. Jansen and Miles W. Newby, Jr., Los Angeles, Cal., for intervenor Texaco, Inc.
 
 
 8
 William J. DeMartini, Los Angeles, Cal., for intervenor Richfield Oil Corp.
 
 
 9
 P. E. Bermingham, Sims Hamilton, Howard Painter, Los Angeles, Cal., for intervenor Socony Mobil Oil Co., Inc.
 
 
 10
 Before HAMLEY, KOELSCH and DUNIWAY, Circuit Judges.
 
 HAMLEY, Circuit Judge:
 
 11
 This proceeding was brought to vacate three protective orders entered in a Government antitrust suit, so that access could be gained to certain documents now withheld from public scrutiny. The district court entered an order denying the motion to vacate the protective orders, and this review was then instituted.
 
 
 12
 On February 28, 1958, Olympic Refining Company (Olympic) brought a treble-damage antitrust suit, referred to herein as the "Olympic case," against Standard Oil Company of California (Standard), and General Petroleum Corporation (General), in the United States District Court for the Northern District of California.[1] On May 29, 1963, Olympic gave notice in that case that on a specified date in Los Angeles, it would take the pretrial deposition of Stanley E. Disney, an official of the Antitrust Division of the United States Department of Justice.
 
 
 13
 On June 3, 1963, the clerk of the United States District Court for the Southern District of California, acting upon request of Olympic made pursuant to Rule 45(d) Federal Rules of Civil Procedure, issued a subpoena duces tecum to Disney, requiring him to produce certain described documents at the deposition hearing referred to above. The described materials are copies of documents which the Government filed several years before in a Government antitrust suit entitled United States v. Standard Oil Co. of California, et al. then pending in the United States District Court for the Southern District of California, and referred to herein as the "Government case."[2]
 
 
 14
 The documents which Disney was required to produce were described as follows:
 
 
 15
 (1) Plaintiff's (Government's) answers, amended answers, and supplemental answers to defendants' interrogatories and all documents and papers related thereto.
 
 
 16
 (2) Documents designated "Description of Documentary Materials and Oral Testimony, Lists of Witnesses and Statements of Witnesses" and all amendments and supplements thereto.
 
 
 17
 (3) Outline of Plaintiff's Contentions filed January 10, 1957.
 
 
 18
 Since all these documents had been filed in the district court in the Government case, Olympic could have examined the filed originals and would not have had to seek copies from a Government official, were it not for the existence of certain protective orders which made it necessary for the clerk of the court to keep the filed originals under seal.
 
 
 19
 The first of these orders was entered on September 6, 1955, pursuant to a stipulation between the Government and the defendants in the Government case. It provided, in effect, that neither the plaintiff nor the defendants would file any of their respective answers to interrogatories without giving fifteen days' prior notice and that, until filed, such answers would be held in confidence.
 
 
 20
 The second such order, dated December 17, 1956, was entered in response to the defendants' motion, under Rule 30(b), Federal Rules of Civil Procedure, made after the Government gave notice, pursuant to the order of September 6, 1955, that it intended to file its answers to defendants' interrogatories. This order requires that the filed answers of the Government, "and all other documents and papers related thereto including the document designated `Description of Documentary Material and Oral Testimony,' lists of witnesses, and statements of witnesses * * *" be retained by the clerk as though under seal.
 
 
 21
 The third protective order, dated June 19, 1959, was one of the two decretal provisions of an order granting the Government's motion that the defendants make prompt delivery to the Government of the original copies of their answers to the interrogatories of the Government. This provision of the order reads:
 
 
 22
 "It Is Further Ordered that plaintiff shall not publicly disclose said answers to interrogatories except during the course of trial of this case or upon further order of this Court."
 
 
 23
 Faced with the subpoena duces tecum directed to Disney, the Government, on August 15, 1963, filed a motion in the Government case to vacate the three protective orders referred to above. Olympic intervened, without objection, in support of the Government motion. The motion was opposed by all of the defendants in the Government case. While there was no formal motion to quash the subpoena duces tecum, the propriety of that subpoena was necessarily drawn into question by the motion to vacate the protective orders. Accordingly, during the district court argument on the Government motion to vacate, all parties proceeded on the assumption that the court could make any order with reference to the subpoena which would be appropriate in view of the disposition of the motion to vacate.[3]
 
 
 24
 Following the argument, the district court on November 12, 1963, entered an order, supported by findings of fact and conclusions of law, denying the motion to vacate the protective orders and quashing the subpoena duces tecum directed to Disney. On November 21, 1963, Olympic moved in this court for leave to file a petition for a writ of mandamus directed to the district judge who had entered the order of November 12, 1963. The specific relief sought was an order directing the district judge to vacate the three protective orders or, in the alternative to vacate the order of November 12, 1963, insofar as that order quashes the subpoena duces tecum.
 
 
 25
 We granted the motion for leave to file the petition, called for a return thereto, and granted all parties in the Olympic case and the Government case leave to intervene in the mandamus proceeding. All did intervene, the Government in favor of Olympic and all others in opposition.
 
 
 26
 The respondent judge and the intervening oil companies joined in their presentation to this court and will be collectively referred to as respondents. At the outset they question the jurisdiction of this court to entertain this review proceeding. It is their contention that since the protective orders, and the order of November 12, 1963, were entered in a Government antitrust suit, they are reviewable, if at all, only by the Supreme Court of the United States. Section 2 of the Expediting Act of 1903, 32 Stat. 823, as amended, 62 Stat. 989 (1948), 15 U.S. C. § 29 (1958), quoted in the margin, is cited as authority for this view.[4]
 
 
 27
 It has been held that, under this statute, proceedings to review a district court order entered in such a suit, whether final or interlocutory, must ordinarily be had in the Supreme Court.[5] An exception, however, is made where the order sought to be reviewed is of an ancillary character disposing of a controversy between private parties outside the main stream of the litigation in which the Government is directly concerned. See Shenandoah Valley Broadcasting, Inc. v. American Society of Composers, Authors & Publishers, 375 U.S. 39, 84 S.Ct. 8, 11 L.Ed. 2d 8, modified 375 U.S. 994, 84 S.Ct. 627, 11 L.Ed.2d 467.
 
 
 28
 In our opinion, the order of November 12, 1963, is of an ancillary character as so defined, and is therefore subject to review in this court. That order, dealing with the question of whether protective orders entered years ago in a Government antitrust suit which was terminated in 1961, disposes of a controversy outside of the main stream of the litigation in the Government case. It is essentially a controversy between private parties in which the Government is not directly concerned, for although the Government made the motion to vacate the protective orders, it did so in aid of Olympic's effort to obtain access to documents which the oil companies do not wish to have released.
 
 
 29
 We need not decide whether the order sought to be reviewed is final and therefore appealable (see Shenandoah, supra), in which event the motion for leave to file a petition for a writ of mandamus could be regarded as a timely notice of appeal. For if not appealable as a final order, mandamus is a proper remedy (see Ex parte Uppercu, 239 U.S. 435, 36 S.Ct. 140, 60 L.Ed. 368), and in the exercise of our discretion we would entertain the petition. See American Concrete Agricultural Pipe Ass'n v. No-Joint Concrete Pipe Co., 9 Cir., 706 F.2d 331.
 
 
 30
 The motion to dismiss the review proceeding for want of jurisdiction in this court is denied.
 
 
 31
 In seeking reversal of the district court order of November 12, 1963, Olympic and the Government question the initial validity of the three protective orders which the district court declined to vacate. However, we do not regard the question of whether the protective orders were valid when entered as properly before us. No party to the antitrust suit appealed from those orders and they are long since final. The only question which we may consider is whether, under the circumstances of this case, the district court should have modified those orders so that Olympic could have access to the documents protected by the orders.
 
 
 32
 The district court found that, in the Government case, defendants waived objections to interrogatories, provided a fuller disclosure than might otherwise have been required of them, made possible the formulation of a consent decree, and agreed to such a decree (stipulated dismissal in the case of Texaco), all in reliance upon the entry and continuing effectiveness of the protective orders.
 
 
 33
 None of these circumstances, in our opinion, support the view that these orders are not subject to modification to meet the reasonable needs of other parties in other litigation. In the federal judicial system trial and pretrial proceedings are ordinarily to be conducted in public. Rule 43(a), Federal Rules of Civil Procedure, provides that in all trials the testimony of witnesses shall be taken orally in open court unless otherwise provided in the rules. The purpose of the federal discovery rules, as pointed out in Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451, is to force a full disclosure.
 
 
 34
 This basic policy has been specifically applied in the field of Government antitrust litigation. In the Publicity in Taking Evidence Act, 37 Stat. 731 (1913), 15 U.S.C. § 30 (1958), it is provided that in the taking of depositions for use in any such suit "* * * the proceedings shall be open to the public as freely as are trials in open court; and no order excluding the public from attendance on any such proceedings shall be valid or enforceable."[6] While this statute does not expressly apply to the acquisition of information by means of interrogatories or subpoenas duces tecum, the policy behind the enactment is equally applicable to these forms of discovery.
 
 
 35
 Private treble-damage actions are an important component of the public interest in "vigilant enforcement of the antitrust laws." Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 329, 75 S.Ct. 865, 99 L.Ed. 1122.[7] Congress had this in mind when it provided, in section 5(a) of the Clayton Act, 38 Stat. 731 (1914), as amended, 69 Stat. 283 (1955), 15 U.S.C. § 16(a) (1958), that the decrees entered in Government antitrust suits are, under certain circumstances, prima facie evidence in a subsequently-prosecuted private antitrust suit.
 
 
 36
 Congress was also interested in encouraging capitulation in Government antitrust suits, and so consent decrees entered before testimony was taken were exempted from the prima facie effect of section 5(a).[8] In addition to obtaining this exemption from section 5(a), a consenting defendant in a Government antitrust suit gains whatever benefit there may be in accepting the terms of the consent decree rather than risking a more onerous decree entered after litigation. A consenting defendant also benefits from the saving in litigation expense which is made possible by a consent decree. But neither in the express nor implied terms of the statutes or rules is there any indication that a consenting defendant could gain the additional benefit of holding under seal, or stricture of nondisclosure, for an indefinite time, information which would otherwise be available to the public or at least to other litigants who had need of it.
 
 
 37
 The district court found that "(s)ome of the material made available to the Government was sensitive, competitive information; other data produced were in the nature of trade secrets."[9] Presumably, this was the principal ground which led to entry of the protective orders, in view of the discretionary power vested in the district court under Rule 30(b) Federal Rules of Civil Procedure.[10] The information thus protected was then current, the parties were permitted to make necessary use of it, and no other person had manifested a need for the information.
 
 
 38
 But neither Rule 30(b), nor any other rule or statute called to our attention, authorizes a district court to protect trade secrets and sensitive competitive information from such disclosure as is relevant to the subject matter involved in a pending action.[11] All that may be done is to afford such protection from disclosure as is practicable, consistent with the right of access thereto for purposes of litigation. This limitation on the power which may be exercised under Rule 30(b) was respected in the Government case here in question for, as noted above, the protective orders did not prevent the parties thereto, who were the only persons then interested, from making such use of the documents covered by the orders as might be necessary in that litigation.
 
 
 39
 Now, nearly three years after termination of the Government suit, and from four to eight years after the documents were placed under the protective orders, Olympic, a litigant in another antitrust action based on the same alleged violations, seeks access to those documents for purposes of discovery. It is entitled to have the orders reconsidered as of this time, and modified in such form as to permit access to the documents subject to reasonable restrictions as to disclosure, whether or not some of the information contained in them may still be regarded as trade secrets or sensitive competitive information.
 
 
 40
 It is immaterial that Olympic could possibly obtain the same information through the process of propounding its own interrogatories to Standard and General. It is entitled to know what those companies and the alleged co-conspirators told the Government, and this requires examination of the documents which were exchanged, or exchanged and filed in that action.
 
 
 41
 It is likewise immaterial that some of the documents or information contained therein may not have been admissible as evidence in the Government case. Ex parte Uppercu, 239 U.S. 435, 440, 36 S.Ct. 140.
 
 
 42
 Nor does it make any difference that the documents or information contained therein may not be admissible in the Olympic case. We are concerned with discovery proceedings. As stated in the last sentence of Rule 26(b), Federal Rules of Civil Procedure, it is not ground for objection to questions asked at a deposition hearing that the testimony will be inadmissible at the trial "if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence." Rule 34, pertaining to the discovery and production of documents, has reference to papers or other tangible objects containing evidence "* * * relating to any of the matters within the scope of the examination permitted by Rule 26(b) * * *." See Hickman v. Taylor, 3 Cir., 153 F.2d 212, 218-219, aff'd on other grounds, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451.
 
 
 43
 The order of November 12, 1963, is reversed and the cause is remanded to the district court for entry of an order modifying the protective orders in such manner that Olympic may have access to the documents in question for use in the Olympic case, subject to such reasonable restriction as may be necessary and practicable to prevent unnecessary disclosure of any present trade secrets or presently sensitive competitive information that may be contained in such documents.
 
 
 
 Notes:
 
 
 [1]
 District court jurisdiction was asserted under section 4 of the Clayton Act, 38 Stat. 731 (1914), 15 U.S.C. § 15 (1958)
 
 
 [2]
 Standard, General and five other oil companies were defendants in the Government case. The other oil company defendants in that case were Shell Oil Co., Inc., The Texas Company (Texaco), Richfield Oil Corporation, Tidewater Associated Oil Company and Union Oil Company of California. All of these companies except Texaco worked out a consent decree with the Government which was approved as a final judgment on June 19, 1959. The case against Texaco was, by stipulation, voluntarily dismissed by the Government on March 7, 1961
 The combination and conspiracy alleged by Olympic in the Olympic case is virtually identical with the combination and conspiracy alleged by the Government in the Government case. While only Standard and General were named defendants in the Olympic case, all of the other oil companies which were defendants in the Government case were named as co-conspirators.
 
 
 [3]
 During the course of the argument in the district court, counsel for the Government orally urged that if the protective orders were vacated the subpoena should be quashed, since Olympic could then examine the original papers in the clerk's office. We observe, however, that if the protective orders were vacated, they would constitute no obstacle to Olympic's obtaining from the Government other documents covered by those orders, including the defendants' answers to the Government's interrogatories, which have not been filed in the Government case, but are in the Government's possession
 
 
 [4]
 Section 2 of the Expediting Act reads:
 "In every civil action brought in any district court of the United States under any of said Acts [antitrust acts], wherein the United States is complainant, an appeal from the final judgment of the district court will lie only to the Supreme Court."
 
 
 [5]
 See United States Alkali Export Ass'n, Inc. v. United States, 325 U.S. 196, 201-202, 65 S.Ct. 1120, 89 L.Ed. 1554; DeBeers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 65 S.Ct. 1130, 89 L. Ed. 1566; United States v. F. M. C. Corp., 9 Cir., 321 F.2d 534, approved by Mr. Justice Goldberg, 84 S.Ct. 4, 11 L.Ed. 2d 20
 
 
 [6]
 This statute was enacted in 1913 to nullify a district court ruling in United States v. United Shoe Machinery Co. of New Jersey, D.Mass., 198 F. 870, in which the public and press were denied access to a hearing before a special master at which depositions were taken. See 49 Cong.Rec. 2511-2514; H.R.Rep. No. 1356, 62d Cong. 3d Sess. (1913). See, also United States v. Procter & Gamble Co., 356 U. S. 677, 683, 689, 7 S.Ct. 983, 2 L.Ed.2d 1077
 
 
 [7]
 See also, Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 751-752, 67 S.Ct. 1015, 91 L.Ed. 1219
 
 
 [8]
 See 51 Cong.Rec. 15824-25 (1914)
 
 
 [9]
 We assume that the material to which reference was thus made was incorporated in the documents which the Government filed in the Government case as well as in the documents, including defendants' answers to interrogatories, which are in the possession of the Government, but which have not been filed
 
 
 [10]
 Rule 30(b) reads:
 "Order for the Protection of Parties and Deponents.
 "After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, the court in which the action is pending may make an order that the deposition shall not be taken, or that it may be taken only at some designated place other than that stated in the notice, or that it may be taken only on written interrogatories, or that certain matters shall not be inquired into, or that the scope of the examination shall be limited to certain matters, or that the examination shall be held with no one present except the parties to the action and their officers or counsel, or that after being sealed the deposition shall be opened only by order of the court, or that secret processes, developments, or research need not be disclosed, or that the parties shall simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court; or the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression."
 
 
 [11]
 See Ex parte Uppercu, 239 U.S. 435, 36 S.Ct. 140; Hartley Pen Co. v. United States District Court, 9 Cir., 287 F.2d 324, 328; A. H. Robins Co. v. Fadely, 5 Cir., 299 F.2d 557, 561; Rule 26(b), Federal Rules of Civil Procedure