Debbie FOLTZ, Plaintiff,

Consumer Action; United Policyholders; Texas Watch, Intervenors,

and

Tierney Adamson; Kevin Snead; Daniel P. Johnson, Intervenors– Appellants.

v.

STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPANY, an Illinois corporation; California Institute of Medical Research & Technology, Inc., a foreign corporation dba Comprehensive Medical Review; Ralph Householder; Steven Becker, Defendants,

v.

April Jean Ho; Jim Mathis, Plaintiffs–Intervenors.

Debbie Foltz, Plaintiff,

and

Tierney Adamson; Kevin Snead; Daniel P. Johnson, Intervenors–Appellants,

v.

State Farm Mutual Automobile Insurance Company, an Illinois corporation, Defendant–Appellee,

and

California Institute of Medical Research & Technology, Inc., a foreign corporation dba Comprehensive Medical Review; Ralph Householder; Steven Becker, Defendants,

v.

April Jean Ho; Jim Mathis, Plaintiffs–Intervenors.

Debbie Foltz, Plaintiff,

April J. Ho; Jim Mathis; Tierney Adamson; Kevin Snead; Daniel P. Johnson, Intervenors,

and

Consumer Action; United Policyholders; Texas Watch, Intervenors–Appellants,

v.

State Farm Mutual Automobile Insurance Company, an Illinois corporation, Defendant–Appellee,

and

Steven Becker, Defendant.

Nos. 00–35187, 00–35283, 01–35137.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 2002.

Filed June 18, 2003.

1126

Daniel J. Gatti, Salem, OR, for plaintiff Debbie Foltz.

Lawrence Walner, Chicago, IL, and Thomas D. D'Amore, Portland, OR, for intervenors-appellants Tierney Adamson, Kevin Snead, and Daniel P. Johnson.

Kathryn H. Clarke, Portland, OR, Leslie A. Brueckner, Trial Lawyers for Public Justice, Washington, D.C., and Matthew Whitman, Meyer & Wyse, Portland, OR, for intervenors-appellants Consumer Action, Texas Watch, and United Policyholders.

Stuart D. Jones, Portland, OR, Ralph C. Spooner, Spooner & Much, Salem, OR, I. Franklin Hunsaker, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, and Vanessa Wells, Heller, Ehrman, White & McAuliffe, Palo Alto, CA, for defendant-appellee State Farm Mutual Automobile Insurance Company.

Bernard W. Mann, San Diego, CA, for defendant California Institute of Medical Research & Technology.

Daniel J. Gatti, Salem, OR, for plaintiff-intervenor April Jean Ho.

Jean A. Magladry, Magladry Weigel, Bellevue, WA, and Ralph E. Wiser, III, Lake Oswego, WA, for plaintiff-intervenor Jim Mathis.

Douglas G. Schaller, Eugene Trial Lawyers Association, Eugene, OR, Amicus.

Before: B. FLETCHER, O'SCANNLAIN, and BERZON, Circuit Judges.

## OPINION

BETTY B. FLETCHER, Circuit Judge.

This case calls upon us to determine when parties other than the original litigants may gain access to materials that a court has placed under protective seal. Private and Public Intervenors appeal. Private Intervenors appeal from the district court's refusal to unseal discovery materials and court records. Public Intervenors appeal from the dismissal of their second motion to unseal documents.

This case follows upon the settlement of a lawsuit that charged State Farm Mutual Automobile Insurance Company ("State Farm") with fraud. In district court, intervenors representing the public moved for public access to sealed court records from that suit. Private Intervenors—individuals involved in collateral litigation against State Farm—sought access to both discovery materials and court records. The district court denied Public Intervenors' renewed motion to unseal documents. The district court granted in part the Private Intervenors' motions to unseal. Three categories of documents, however, remained under seal: (1) various discovery documents, following the denial of the Private Intervenors' motion to modify the protective order covering them; (2) the summary judgment motions and supporting materials; and (3) other court records that had previously been filed under seal pursuant to the district court's blanket protective order in discovery. These appeals followed.

We affirm the district court's denial of the Public Intervenors' motion. We affirm in part and reverse in part the Private Intervenors' motions to unseal, and remand with instructions.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

In the underlying litigation, Debbie Foltz and others alleged that State Farm

conspired with California Institute of Medical Research & Technology ("CMR"), which provided medical review services, to defraud insureds of personal injury protection owed to them under their State Farm automobile policies. Both State Farm and CMR were named as defendants in the *Foltz* litigation. During the discovery process, the defendants requested and the district court entered three protective orders. The first kept confidential all documentary evidence and testimony concerning a motion by State Farm to disqualify the law firm representing the plaintiff. The second specifically protected from disclosure a floppy disk produced by CMR during discovery. The third was a blanket protective order designed to keep secret all other "confidential information" produced by the parties in discovery and/or filed with the court, absent agreement or an order by the district court. Reproduced in full in the appendix, the protective order in pertinent part stated that: "Confidential Information shall not be disclosed, disseminated, or conveyed in any way by the Producing Party, the [Requesting/]Disclosing Party or Witnesses except as provided herein." Neither State Farm nor the plaintiffs in *Foltz* could disclose covered documents without complying with the terms of this order.[1]

After four years of litigation, the parties agreed to a confidential settlement and requested that the court file be sealed. The district court granted the request to seal all documents in the court file except those that the parties desired to remain unsealed. On November 23, 1998, the court entered a final judgment of dismissal pursuant to the confidential settlement and a stipulated order releasing the court file to State Farm with the exception of all minute orders, the Second Amended Complaint, the Answers to the Second Amended Complaint, the Stipulation for Final Judgment, and the Final Judgment.[2]

On June 1, 1999, public interest groups Texas Watch, Consumer Action, and United Policyholders (collectively, the "Public Intervenors") moved to intervene and to make public the court records in the *Foltz* litigation and to gain access to the discovery material. On September 14, 1999, another set of intervenors, Tierney Adamson and Kevin Snead (collectively, the "Private Intervenors"), moved to intervene, to unseal the court records, and to modify the protective orders to gain access to discovery material.[3] The Private Intervenors are engaged in collateral litigation in state courts against State Farm. According to their attorney, the plaintiffs in these collat-

---

**1.** Absent court order or a private agreement, the *Foltz* parties would be free to disclose their discovered materials to collateral litigants. *Cf. Harris v. Amoco Prod. Co.*, 768 F.2d 669, 683–84 (5th Cir.1985) ("A party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal. The federal rules do not themselves limit the use of discovered documents or information." (citations omitted)).

**2.** No questions are raised in these appeals concerning the propriety of either the district court's release of some of the court files to State Farm "for final disposition," or the removal of the *Foltz* litigation records from the court's computer system. These files and rec-

ords were eventually restored. Consequently, although we find the actions taken troubling, *cf. In re Sealed Case*, 199 F.3d 522, 525 (D.C.Cir.2000) (collecting cases requiring public docketing in judicial proceedings), we do not address their propriety.

**3.** Daniel P. Johnson originally joined the Private Intervenors' motions to intervene and unseal as a representative plaintiff in the Snead action. He is no longer a party to the Snead action and, therefore, is not a party to this appeal.

The Private Intervenors' motions to intervene and unseal were served on all parties to the *Foltz* litigation. State Farm was the only defendant that responded to oppose the motion.

eral lawsuits make accusations against State Farm and CMR similar to those made in the *Foltz* litigation; they allege that State Farm conspired with CMR to wrongfully deny personal injury coverage under State Farm automobile policies by preparing fraudulent medical reviews.

The district court initially ruled on the intervenors' motions on December 14, 1999. The district court granted the motions to intervene, partially granted the motions to unseal, and denied the motion to modify the protective order. The district court held that the intervenors would not be given access to discovery materials, summary judgment materials, and other materials originally filed under seal because they contain confidential, third-party medical and personnel files as well as proprietary information of State Farm.

On December 29, 1999, the Private Intervenors filed a Motion to Clarify/Modify the district court's December 14, 1999 order. On January 17, 2000, the Public Intervenors filed a motion to set a deadline for State Farm to return the court file. On January 25, 2000, the district court entered an order partially allowing and partially denying the Private Intervenors' Motion to Clarify/Modify and dismissing the Public Intervenors' motion to set a deadline for returning the court file as moot because the file had been returned to the court. The district court further clarified which documents in the court file were to remain sealed in an order entered on February 17, 2000; the district court unsealed certain documents that previously had been sealed under the original order.

On February 24, 2000, the Private Intervenors filed a Notice of Appeal from the district court's order of January 25, 2000. On February 28, 2000, the district court filed a record of its order setting forth the document numbers of unsealed and sealed documents covered by its February 17, 2000 order. The Private Intervenors filed

a notice of appeal from the February 17, 2000 order on March 13, 2000.

The Public Intervenors did not appeal from the district court's December 14, 1999, January 25, 2000, or February 17, 2000 orders. Instead, they waited until December 7, 2000 to file a Renewed Motion to Unseal Court Records or to Compel Showing of Confidentiality ("Renewed Motion"). The district court denied the Renewed Motion in an order dated January 9, 2001; it held that it did not have jurisdiction to rule on the motion and that, even if it had jurisdiction, the motion would be denied on the merits. The Public Intervenors filed a notice of appeal from this last order on January 31, 2001. This court consolidated for our review their appeal with the appeals by the Private Intervenors.

## II. APPEAL BY PRIVATE INTERVENORS

### A. JURISDICTION

■ The Private Intervenors appeal from the district court's order dated January 25, 2000, which denied in part the motions to unseal and the motion to modify the protective order. They also appeal from the order dated February 17, 2000, which modified the earlier order. There were no other matters pending before the district court upon entry of the February 17th order. Therefore, the order is appealable either as a final order under 28 U.S.C. § 1291 or as a collateral order. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472 (9th Cir.1992); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1426 (10th Cir.1990). *See also Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1298 (7th Cir.1980) (appeal from modification of protective order proper under collateral order doctrine); *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 293–94 (2d Cir. 1979) (appeal from orders granting inter-

venor status and modification of protective order proper under 28 U.S.C. § 1291 because no other matter pending before the court).

State Farm complains that the Private Intervenors failed to appeal from what it considers to be the final order of the district court, the minute entry on February 28, 2000, recording the document numbers of sealed and unsealed documents. However, the February 28, 2000 minute entry is not denominated an "ORDER," nor does it purport to order anything. It merely records, on a document-by-document basis, the documents covered by the February 17, 2000 order. We find no merit in State Farm's contention that the February 28, 2000 minute entry, rather than the February 17, 2000 order, was the final order on the Private Intervenors' motions.

## B. *ACCESS TO SEALED DOCUMENTS*

State Farm asserts that two categories of documents should remain under seal: those produced during discovery under the blanket protective order and never filed with the court, and those filed with the court under seal regardless of whether they were produced during discovery. Each category of document is subject to different rules for preserving its secrecy. We will apply as relevant separate analysis to discovery documents and to court records.

### 1. *Right of Access to Unfiled Discovery Materials*

■ The district court refused to modify its protective order to allow the Private Intervenors access to unfiled discovery materials from the *Foltz* litigation for use in their collateral litigation. We review this decision for abuse of discretion. *Beckman,* 966 F.2d at 472.

■ **a.** *General application of Rule 26.* Federal Rule of Civil Procedure 26(c)

states that when a party or other person from whom discovery is sought makes a motion asserting good cause for a protective order, "the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," based on any of several listed reasons. Those that appear pertinent to the present case include specifying "terms and conditions" of discovery, limiting "the scope of the disclosure ... to certain matters," requiring that "a deposition, after being sealed, be opened only by order of the court," and particularly "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way...." FED. R. CIV. P. 26(c)(2), 26(c)(4), 26(c)(6), 26(c)(7). Any such order, however, requires that the court's determination "identify and discuss the factors it considered in its 'good cause' examination to allow appellate review of the exercise of its discretion." *Phillips v. Gen. Motors,* 307 F.3d 1206, 1212 (9th Cir.2002).

■ A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted. *Id.* at 1210–11 (citing *San Jose Mercury News,* 187 F.3d at 1102); *see also Beckman,* 966 F.2d at 476 ("[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.") (quoting *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986) (internal quotation marks omitted)); *Deford v. Schmid Prods. Co.,* 120 F.R.D. 648, 653 (D.Md.1987) (requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete

examples, rather than broad, conclusory allegations of potential harm").

■ Two protective orders address unfiled discovery documents in the instant case. One regards a floppy disk produced by CMR. This disk does not appear in the court record, and State Farm fails to tie any documents in the court record to the disk. Unless the court articulates good cause for the disk to remain under seal, that seal must be removed.

■ Second, the district court issued a blanket protective order, forbidding both parties to disclose any information produced in discovery absent permission from the other party or from the district court. Some discovery documents sealed under this order contained confidential information that would satisfy the "good cause" standard of Rule 26(c).[4] Under the blanket protective order, however, the district court never required State Farm to show that *specific* discovery documents, whether eventually filed with the court or not, contained such information. While this course of action was understandable for the unfiled documents given the onerous burden document review entails, the blanket order makes appellate review difficult now that an intervenor is questioning the propriety of the original order.

Apart from generally noting the existence of confidential third party information, which may or may not have been filed, State Farm has not asserted, much less shown, specific harm or prejudice that it expects will arise from disclosure of any particular documents produced in discovery, as required by *Beckman.* With the exception of asserting the presence of information in medical records identifying third parties, the confidentiality of which can be protected using procedures described below, State Farm has failed to meet the burden imposed by Rule 26(c) of making a "particular showing" of good cause, nor has it alleged "*specific* prejudice or harm now." *Beckman,* 966 F.2d at 476 (emphasis added). State Farm has not identified any documents containing trade secrets and financial information. In light of *Beckman,* without more we cannot sustain the district court's ruling.

Now that the Private Intervenors have challenged the contention that the unfiled discovery documents belong under seal, the district court must require State Farm to make an actual showing of good cause for their continuing protection under Federal Rule of Civil Procedure 26(c). *See Phillips,* 307 F.3d at 1212 (remanding to district court with instructions to conduct a "good cause" analysis); *Deford,* 120 F.R.D. at 653 ("The burden is on the party requesting a protective order to demonstrate that (1) the material in question is a trade secret or other confidential information within the scope of Rule 26(c), and (2) disclosure would cause an identifiable, significant harm.").

■ ■ **b. *Discovery by Collateral Litigants.*** In addition to access to material that should not have been placed under seal in the first instance, collateral litigants may be entitled to modification of the original protective order permitting them access to the properly covered material, subject to the terms of that order. This court strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation. *Beckman,* 966 F.2d at 475. Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery. *Id.; United Nuclear,* 905 F.2d at 1428 (quoting and adopting the

---

4. We know this because after they were filed the district court found them to contain trade secrets, financial information, and confidential information about third parties.

standard laid down by the Seventh Circuit in *Wilk*, 635 F.2d at 1299, "that where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification."); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2044.1 (2d ed.1994). Where reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material should generally be granted. *Beckman*, 966 F.2d at 475; *Olympic Refining Co. v. Carter*, 332 F.2d 260, 265–66 (9th Cir. 1964).

■ Nonetheless, a court should not grant a collateral litigant's request for such modification automatically. As an initial matter, the collateral litigant must demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein. Requiring a showing of relevance prevents collateral litigants from gaining access to discovery materials merely to subvert limitations on discovery in another proceeding. *See Wilk*, 635 F.2d at 1300. Such relevance hinges "on the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings." Laurie Kratky Dore, *Secrecy by Consent: The Use and Limits of Confidentiality in the Pursuit of Settlement*, 74 Notre Dame L.Rev. 283, 366–67 (1999).

■ We take this opportunity to clarify the mechanics of this relevance inquiry. The case law suggests that the court that entered the protective order should satisfy itself that the protected discovery is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order. *See Wilk*, 635 F.2d at 1300 (comparing complaints to conclude that "much, if not most," of the protected discovery would be eventually discoverable in the collateral suit); *United Nuclear*, 905 F.2d at 1428 (upholding the modification of a protective order but admonishing the district court to leave the specific "[q]uestions of the discoverability in the [collateral] litigation of the materials discovered in [this] litigation" to the collateral courts (quoting *Superior Oil Co. v. Am. Petrofina Co.*, 785 F.2d 130, 130 (5th Cir.1986) (internal quotation marks omitted))). No circuits require the collateral litigant to obtain a relevance determination from the court overseeing the collateral litigation prior to requesting the modification of a protective order from the court that issued the order.[5] The court that issued the order is in the best position to make the relevance assessment for it presumably is the only court familiar with the contents of the protected discovery.

Because the district court that issued the order makes only a rough estimate of relevance, however, the only issue it determines is whether the protective order will

---

5. In *Wilk*, a multidistrict panel opined, prior to the collateral litigant's request for modification of a protective order in an Illinois action, that much of the relevant discovery in the collateral litigation had already occurred in the Illinois action. *Wilk*, 635 F.2d at 1301. This opinion "strengthened" the Seventh Circuit's decision to vacate the denial of the motion to modify by the Illinois district court, but the Seventh Circuit conducted its own relevance determination as well. *Id.* It did not indicate that a prior determination by the court overseeing the collateral litigation is a prerequisite for a collateral litigant's motion to modify a protective order.

bar the collateral litigants from gaining access to the discovery already conducted. Even if the issuing court modifies the protective order, it does not decide whether the collateral litigants will ultimately obtain the discovery materials. As the Fifth and Tenth Circuits have noted, once the district court has modified its protective order, it must refrain from embroiling itself in the specific discovery disputes applicable only to the collateral suits. *Superior Oil*, 785 F.2d at 130; *United Nuclear*, 905 F.2d at 1428 ("[B]ecause the underlying controversy [is] no longer alive, 'the court simply lack[s] power to impose any new, affirmative requirements on the parties relating to discovery.'") (quoting *Pub. Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 781 (1st Cir.1988)).

The disputes over the ultimate discoverability of specific materials covered by the protective order must be resolved by the collateral courts. *Id.* Allowing the parties to the collateral litigation to raise specific relevance and privilege objections to the production of any otherwise properly protected materials in the collateral courts further serves to prevent the subversion of limitations on discovery in the collateral proceedings. These procedures also preserve the proper role of each of the courts involved: the court responsible for the original protective order decides whether modifying the order will eliminate the potential for duplicative discovery. If the protective order is modified, the collateral courts may freely control the discovery processes in the controversies before them without running up against the protective order of another court.

■■■■ Of course, before deciding to modify the protective order, the court that issued it must consider other factors in addition to the relevance of the protected discovery to the collateral litigation. In particular, it must weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery. *See Beckman*, 966 F.2d at 475. However, we have observed that "[r]eliance will be less with a blanket [protective] order, because it is by nature overinclusive." *Id.* at 476. As noted above, a party seeking the protection of the court via a blanket protective order typically does not make the "good cause" showing required by Rule 26(c) with respect to any particular document. Thus, reliance on a blanket protective order in granting discovery and settling a case, without more, will not justify a refusal to modify. "[A]ny legitimate interest ... in continued secrecy as against the public at large can be accommodated by placing [the collateral litigants] under the same restrictions on use and disclosure contained in the original protective order." *United Nuclear*, 905 F.2d at 1428; *see also Beckman*, 966 F.2d at 476.

**c. The Protective Order in This Case.**
We now turn to the district court's refusal to modify its protective order as to discovery documents in this case, examining it in light of the procedures and considerations we have delineated above. Here, the Private Intervenors purport to be engaged in litigation against State Farm with allegations substantially similar to those involved in the *Foltz* litigation. The Private Intervenors accuse State Farm of conspiring with CMR to fraudulently deny personal injury claims under its automobile policies during a period of time overlapping that involved in *Foltz*'s conspiracy claim. They moved to modify the protective order to permit access to the *Foltz* discovery materials for use in their collateral litigation.

The district court denied the motion to modify with little explanation. The entire disposition with respect to this motion consisted of the following:

> [T]he proposed intervenors' motion to modify the protective orders in this case

is denied. A collateral litigant will not be permitted to exploit another's discovery in the sense of instituting the collateral litigation simply as a device to obtain access to sealed information. *See Wilk v. Am. Medical Assoc.*, 635 F.2d 1295, 1300 (7th Cir.1980). Federal Discovery may not be used to merely subvert limitations on discovery in other proceedings. *Id.* Thus, a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual discovery in the collateral litigation.

Dec. 14, 1999 Dist. Ct. Order at 6. While these are correct statements of legal principles, the district court utterly fails to apply them to the facts of this case. It articulates no basis for concluding that the information contained in the *Foltz* discovery would not be discoverable in the collateral litigation or that the Private Intervenors are not bona fide litigants.

 Because the district court failed to undertake the relevance determination, we find that it abused its discretion in denying the Private Intervenors' motion to modify. If any properly protected *Foltz* discovery is relevant to the collateral suits, the district court should have modified the protective order in the interest of avoiding duplicative discovery; the courts overseeing the collateral litigation can settle any disputes as to whether particular documents are discoverable in the collateral litigation. Consistent with the law as outlined above, State Farm's reliance on the overinclusive blanket protective order is an insufficient reason to refuse to modify the protective order. *See Olympic Refining*, 332 F.2d at 265 ("All that may be done is to afford such protection from disclosure as is practicable, consistent with the right of access thereto for purposes of litigation."). Any trade secrets, financial information, and third-party medical or personnel information can be protected by placing the Private Intervenors under the same use and disclosure restrictions contained in the original protective order.

We therefore remand to the district court with instructions to make a relevance determination based upon a comparison of the complaints in the *Foltz* litigation and the collateral suits, the contents of the protected discovery, the general rules on the scope of discovery in the collateral jurisdictions, and any other relevant factors that are in conformity with this opinion.

## 2. *Right of Access to Judicial Records*

 *Phillips* notes that "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." 307 F.3d at 1213 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). When discovery material is filed with the court, however, its status changes. If the documents are not among those which have "traditionally been kept secret for important policy reasons," *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir.1989), then "the public policy reasons behind a presumption of access to judicial documents (judicial accountability, education about the judicial process etc.)," *Phillips*, 307 F.3d at 1213, apply. In *Nixon v. Warner Communications*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), the Supreme Court recognized a federal common law right "to inspect and copy public records and documents." This right extends to pretrial documents filed in civil cases, including materials submitted in connection with motions for summary judgment. *San Jose Mercury News*, 187 F.3d at 1102; *Republic of the Philippines v. Westing-*

*house Elec. Corp.*, 949 F.2d 653, 660 (3d Cir.1991).

 In this circuit, we start with a strong presumption in favor of access to court records. *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir.1995) (recognizing strong presumption in context of civil trial); *accord United States v. Edwards*, 672 F.2d 1289, 1294 (7th Cir.1982) (same in context of criminal trial); *United States v. Criden*, 648 F.2d 814, 823 (3d Cir.1981) (same). The common law right of access, however, is not absolute and can be overridden given sufficiently compelling reasons for doing so. *San Jose Mercury News*, 187 F.3d at 1102. In making the determination, courts should consider all relevant factors, including:

> the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets.... After taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.

*Hagestad*, 49 F.3d at 1434 (internal citations and quotations omitted). This process allows for meaningful "appellate review of whether relevant factors were considered and given appropriate weight." *Id.* If the district court conscientiously balances the competing interests and articulates compelling reasons supported by specific factual findings, its decision will be reviewed only for an abuse of discretion. *San Jose Mercury News*, 187 F.3d at 1102–03 (reviewing for clear error a district court decision "based on a failure to recognize the existence of a pre-judgment federal common law right of access to civil court documents").

 In *Phillips*, however, we carved out an exception to the presumption of access. The issue presented in that case was whether the presumption of access applies to material filed with the court under seal pursuant to a valid protective order. 307 F.3d at 1213. We held that "when a party attaches a sealed discovery document to a *nondispositive* motion, the usual presumption of the public's right of access is rebutted." *Id.* (emphasis added). We reasoned that the presumption of access was rebutted because "[w]hen a court grants a protective order for information produced during discovery, it already has determined that 'good cause' exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Id.* Applying the presumption of access in such a circumstance would undermine a district court's power to fashion effective protective orders. In short, "good cause" suffices to warrant preserving the secrecy of sealed discovery material attached to nondispositive motions. As we noted previously, to have been sealed at all, the discovery material in this case should have met the "good cause" standard of Rule 26(c).

Our holding in *Phillips* was expressly limited to the status of materials filed under seal when attached to a *non-dispositive* motion. Here, some of the sealed materials in the public record are attached to the summary judgment motions. There are good reasons to distinguish between dispositive and nondispositive motions. In *Seattle Times*, the Supreme Court noted that "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action." 467 U.S. at 33, 104 S.Ct. 2199. The same cannot be said for materials attached to a summary judgment motion because "summary judgment adjudicates substantive rights and serves as a substitute for trial." *Rushford v. The New Yorker Magazine*, 846 F.2d

249, 252 (4th Cir.1988). As the Fourth Circuit held in *Rushford,* "once the [sealed discovery] documents are made part of a dispositive motion [e.g., a summary judgment motion ruled upon by the court] . . . they lose their status of being raw fruits of discovery," and no longer enjoy protected status "without some overriding interests in favor of keeping the discovery documents under seal." *Id.* at 252.

In short, we follow the lead of the Fourth Circuit and hold that the presumption of access is not rebutted where, as here, documents subject to a protective order are filed under seal as attachments to a dispositive motion. *Id.* The *Hagestad* 'compelling reasons' standard continues to apply.

In the instant case, the district court denied the Private Intervenors access to approximately eighty-five documents that had been filed with the court in the *Foltz* litigation, including discovery and summary judgment motions and supporting materials. At first glance, it appears that the district court identified compelling reasons for maintaining a seal on certain court records. It conducted an *in camera* review of the documents in the court file [6] and recognized the proper legal standards

for denying access to court records as described above. It also acknowledged that "[a] litigant who might be embarrassed, incriminated, or exposed to litigation through dissemination of materials is not, without more, entitled to the court's protection. . . ." Dec. 14, 1999 Dist. Ct. Order at 12 (citing *Nestle Foods Corp. v. Aetna Cas. and Sur. Co.,* 129 F.R.D. 483, 486 (D.N.J.1990); *Wauchop v. Domino's Pizza, Inc.,* 138 F.R.D. 539, 546–47 (N.D.Ind.1991); *Culinary Foods, Inc. v. Raychem Corp.,* 151 F.R.D. 297, 301 (N.D.Ill.1993)). The court concluded that State Farm failed to provide "articulable facts" showing a compelling reason to seal the entire court file. Therefore, it granted the intervenors' motion to unseal in part.

State Farm has asserted what it considers to be compelling reasons to retain the seal on the remaining court records. At trial, State Farm argued that these materials contain confidential financial information, third-party medical records, personnel files, and trade secrets. The district court deemed these compelling reasons to maintain the seal on the summary judgment motions and supporting materials as well as other materials originally filed under seal. The district court rejected the

---

6. The Private Intervenors argue that *in camera* inspection was an inadequate procedure because it deprived them of the opportunity to argue effectively against State Farm's contention that the sealed records contain confidential information. However, *in camera* inspection is a commonly-used procedural method for determining whether information should be protected or revealed to other parties. *See Lissner v. U.S. Customs Serv.,* 241 F.3d 1220, 1222–23 (9th Cir.2001) (reviewing district court's Freedom of Information Act determination based only on *in camera* inspection of the government records); Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence §§ 216, 222 (1994 & Supp.2001) (noting use of *in camera* inspection to determine whether trade secrets privilege or state secrets privilege applies). *But cf. Natta v.*

*Zletz,* 405 F.2d 99, 101 (7th Cir.1968) (criticizing *in camera* review in context of claim of trade secrets privilege on ground that counsel seeking disclosure had no opportunity to rebut the trade secrets claim). In cases such as this, there are few, if any, alternatives to *in camera* inspection that do not defeat the purpose of the rules and privileges protecting confidential material. As a result, we rely in the first instance upon the district court conducting the *in camera* inspection to assess critically the arguments of the party opposing disclosure. Meaningful appellate review, made possible by the district court's articulation of compelling reasons for its decision supported by specific factual findings, provides a second line of defense. *Hagestad,* 49 F.3d at 1434–35.

Private Intervenors' argument for redaction of confidential information, concluding that redaction would leave only meaningless connective words and phrases that would be of no benefit in collateral litigation.

■ The district court's analysis is misleading. We have previously noted State Farm's failure to identify where in the documents confidential financial information and trade secrets are to be found. Our review of the record also reveals that, in fact, very few of the documents contain any third-party medical or personnel information. Most of the material in the sealed record is composed of depositions of doctors and CMR employees regarding CMR's relationship with State Farm, CMR's boilerplate medical reports, and the forgery of doctors' signatures on the reports. Contrary to the district court's conclusion, the limited number of third-party medical and personnel records can be redacted easily to protect third-party privacy interests while leaving other meaningful information.

■ In considering the Private Intervenors' redaction argument, the district court overestimated the amount of private information that would have to be concealed. Simply redacting the identifying information of third parties (*e.g.*, their names, addresses, telephone numbers, and social security numbers) from these records and disclosing the remaining information would not injure the third parties but would reveal only State Farm's actions in processing personal injury claims. This disclosure might harm State Farm by exposing it to additional liability and litigation, as noted above, but a litigant is not entitled to the court's protection from this type of harm. *See Nestle Foods,* 129 F.R.D. at 486.

We do not see how the presence of a small number of third-party medical and personnel records that can be redacted with minimal effort constitutes "good cause," let alone a compelling reason, for this protective order to overcome the strong presumption in favor of public access. The district court abused its discretion in concluding that this first proposed compelling reason justified maintaining the seal on these judicial records. *See Hagestad,* 49 F.3d at 1434 (observing that meaningful appellate review of an order sealing court records entails determining "whether relevant factors were considered and given appropriate weight").

State Farm also argues that a second compelling reason, unarticulated by the district court, justifies maintaining a seal on all records originally produced during discovery. Specifically, State Farm contends that it relied on the confidentiality provisions of the protective order issued by the district court in consenting to discovery requests and settling the *Foltz* litigation. We must therefore examine what heightened protection exists for discovery materials that were filed.

■ The central concern in determining whether access should be granted to documents sealed under a protective order is whether that order was relied upon in the decision to produce documents. *See Beckman,* 966 F.2d at 475. It is axiomatic that:

> Among the goals furthered by protective orders is reducing conflict over discovery and facilitating the flow of information through discovery. Where that has happened, changing the ground rules later is to be avoided because protective orders that cannot be relied upon will not foster cooperation through discovery.

Wright, Miller & Marcus § 2044.1. Of course, the extent to which a party can rely on a protective order depends on the extent to which the order did reasonably induce the party to allow discovery as op-

posed to settling the case. *Beckman,* 966 F.2d at 475; Wright, Miller & Marcus § 2044.1 (commenting that the effect of reliance depends on its reasonableness).

■ Here, two protective orders entered during discovery apply in whole or part to documents eventually filed with the court. The first protects evidence produced by State Farm in the course of pursuing its motion to disqualify the law firm representing the plaintiff. We do not upset this ruling. It deals with the very narrow issue of whether plaintiff's counsel should be disqualified. We accept the proposition that State Farm, to present this issue, would be required to produce attorney-client communications and possibly work product that are traditionally protected from disclosure. Neither the public nor collateral litigants have any apparent right to or interest in such disclosure. This does not foreclose independent discovery in any collateral litigation. We see no conceivable policy reason to serve up such information on a silver platter.

■ The second protective order on which State Farm allegedly relied is a blanket one treating all information produced in connection with the discovery process as confidential. As noted above, "[r]eliance will be less with a blanket [protective] order, because it is by nature over-inclusive." *Beckman,* 966 F.2d at 476. Because State Farm obtained the blanket protective order without making a particularized showing of good cause with respect to any individual document, it could not reasonably rely on the order to hold these records under seal forever. *See San Jose Mercury News,* 187 F.3d at 1103; *Olympic Refining,* 332 F.2d at 264–66, *cited with approval in Beckman,* 966 F.2d at 475–76. Thus, State Farm's reliance interest fails to offer a compelling reason to overcome the presumption in favor of access, and State Farm offers no other.

State Farm has thus identified no compelling reason to justify sealing the documents in this court record, with the exception of the court records covered by the protective order dealing with the disqualification of plaintiff's counsel. Because the district court abused its discretion in denying the Private Intervenors' motion to unseal the court records unrelated to the disqualification issue, we reverse and remand. On remand, we instruct the district court to redact identifying information from third-party medical and personnel records. Then, with the exception of the court records covered by the disqualification protective order, which may remain under seal, it must remove the seal from all other court records unless it can specify sufficiently compelling reasons for maintaining a seal over particular documents.

### III. *APPEAL BY PUBLIC INTERVENORS*

■ The Public Intervenors appeal the district court's denial of their Renewed Motion to Unseal the documents filed with the court. We conclude that their appeal is not well taken. They did not timely appeal from the February 17, 2000 order. They are precluded from a second bite of the apple.

### IV. *CONCLUSION*

We affirm the sealing of the documents relating to the law firm disqualification dispute. We affirm the denial of the Public Intervenors' Renewed Motion. We reverse and remand for further proceedings as to the balance. The district court abused its discretion in sealing discovery materials in the absence of a showing of good cause. It also abused its discretion in maintaining under seal the filed documents to which no compelling reason for secrecy applies.

On remand, the district court is instructed as follows:

1) the district court must require State Farm to show good cause under Federal Rule of Civil Procedure 26(c) for continuing protection against the collateral litigants of materials produced in discovery but not made part of the court record;

2) the district court must make a relevance determination with respect to the collateral litigants in conformity with this opinion, and modify the protective order to authorize release of documents to collateral litigants in conformity with the procedures set forth in this opinion;

3) the district court should keep under seal those court records covered by the disqualification protective order;

4) the district court must redact identifying information from third-party medical and personnel records, and release them along with all other court records for which compelling reasons for secrecy have not been demonstrated.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

## APPENDIX

### PROTECTIVE ORDER REGARDING DISCOVERY

#### I.

This Court, having previously issued its oral protective order, and based upon defendants' motion to issue a written protective order, now, therefore,

#### II.

#### ORDER

IT IS HEREBY ORDERED:

1. All Confidential Information shall be treated as confidential and shall not be disclosed except as provided herein.

2. DEFINED TERMS USED HEREIN:

a. *Confidential Information:* as used herein, Confidential Information means all information produced in any form, including printed or electronically recorded documents, in connection with the discovery processes in the above-entitled cases, including, but not limited to, deposition testimony, answers to interrogatories, documents produced in response to requests for production, responses to requests for admissions, medical records and any documents recorded on computer disks;

b. *Producing Party:* as used herein, a Producing Party is the party from whom Confidential Information was disclosed, obtained or originated;

c. *Requesting/Disclosing Party:* as used herein, a Requesting/Disclosing Party is the party who requests and/or shares Confidential Information with anyone;

d. *Witnesses:* as used herein, Witnesses include the parties' counsel, their employees, their expert witnesses, and fact witnesses disclosed to opposing parties with whom the Disclosing Party shares or otherwise discloses Confidential Information;

3. Confidential Information shall not be disclosed, disseminated, or conveyed in any way by the Producing Party, the Disclosing Party or Witnesses except as provided herein.

4. A Disclosing Party desiring to use or disclose any of the Confidential Information shall first specifically identify the Confidential Information (by including its Bates stamp numbers) and thereafter provide all attorneys for the other parties with no less than ten days notice that the Disclosing Party is requesting consent to disclose or use the Confidential Informa-

tion outside of this case. If the Confidential Information is intended for use in another case, the other case shall be identified by its proper caption and number. A copy of any protective/confidentiality order in the other case shall be provided. The name, address and phone number of the Judge assigned to the other case shall be provided. The name, addresses and phone numbers of any individual(s) to whom disclosure of the Confidential Information will be made shall be provided at the time the request for consent is made.

5. If the Court orders disclosure of Confidential Information or if all of the attorneys for the other parties consent to the disclosure or use of the Confidential Information then the Requesting Party can use or disclose the Confidential Information in the other case providing that prior to any disclosure, the Disclosing Party informs the individual(s) to whom the disclosure will be made that the information being disclosed is confidential and subject to a Protective Order and the individual(s) to whom the disclosure will be made sign a statement acknowledging that they will be bound by the terms of the Protective Order previously entered in this case.

6. If all of the attorneys for the other parties do not consent to the disclosure or use of the Confidential Information, then the Requesting Party shall not use or disclose the Confidential Information in the other case without prior approval of this Court.

7. Consent to the disclosure or use of the Confidential Information in another case is deemed limited to the use specifically identified and shall not be deemed to be a waiver of any parties' rights in this case or in that other case, including, but not limited to, the parties' right to object to the admissibility of the Confidential Information as evidence.

8. If consent to the disclosure or use of the Confidential Information is permitted by order of this Court, the Requesting Party shall not request or otherwise attempt to duplicate the same or similar discovery through the use of any discovery processes provided under the Federal Rules of Civil Procedure.

9. To the extent that any Confidential Information is disclosed pursuant to this Order, the documents shall be appropriately marked with the following legend: CONFIDENTIAL DOCUMENT PRODUCED IN FOLTZ V. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, ET. AL. U.S. DISTRICT COURT FOR THE STATE OF OREGON CASE NO. 94–6293–HO SUBJECT TO PROTECTIVE ORDER and PRODUCED IN (NAME OF CASE, COURT AND NUMBER) SUBJECT TO PROTECTIVE/ CONFIDENTIALITY ORDER.

10. Confidential Information shared with or otherwise disclosed to Witnesses shall be returned to the Disclosing Party at the conclusion of this action. The Disclosing Party shall then return all Confidential Information to the Producing Party within thirty (30) days of the conclusion of this action.

11. To the extent that a document filed with the court in another case may reveal Confidential Information, any portion of the document containing such Confidential Information shall be filed in a sealed envelope and the document and envelope shall bear the following legend:

CONFIDENTIAL: NOT TO BE USED, COPIED, OR DISCLOSED EXCEPT IN ACCORDANCE WITH THE PROTECTIVE ORDER, *Foltz v. State Farm, et al.,* case number 94–6293–HO (LEAD) (and related cases)

The service copies shall also be so marked. The Clerk shall maintain under seal all

Confidential Information filed under seal with the Court.

12. Nothing contained in this Protective Order shall be construed to prevent any party's use at deposition or trial of any Confidential Information unless ordered otherwise by the Court.

13. All Confidential Information produced by the parties shall be treated in a confidential manner except that at any time a party may challenge the confidentiality of any Confidential Information by providing written notice to the Producing Party's counsel and all other parties' counsel, specifically identifying such document by its number used by the Producing Party. The Producing Party and all other parties' counsel then shall have seven working days following the receipt of the written notice within which to respond to the challenging party. If the parties' counsel do not agree to a voluntary resolution of the challenge, then the challenging party may seek relief from the Protective Order. If the parties' counsel agree to a voluntary resolution of a challenge, the parties' agreement will be binding. The consent of all parties' counsel is necessary to reach a voluntary resolution of a challenge.

14. The Producing Party of Confidential Information shall not be limited as to the use of that information by this Protective Order.

15. The provisions of this Protective Order shall survive after termination of this action.

16. The Court may modify this Protective Order at any time for good cause shown and upon notice to the affected parties. The parties may further stipulate to make additional documents subject to this Protective Order.